STATE OF NORTH CAROLINA v. SAMUEL JAMES SHUFORD

No. 327A93

(Filed 9 September 1994)

1. **Criminal Law § 732 (NCI4th)— instructions—admission of facts by defendant—no expression of opinion**

    The trial court did not express an opinion on the evidence by instructing the jury in a first-degree murder case that "[t]here is evidence in this case which tends to show the defendant has admitted facts relating to the crime charged in this case," even though defendant maintained that the killing was in self-defense, where defendant testified on direct examination that he pulled out his gun and shot the victim, and the court's further instructions made it clear that it was solely for the jury to determine whether the defendant had in fact made any admission and the weight to be accorded thereto.

    **Am Jur 2d, Trial §§ 1077 et seq.**

2. **Evidence and Witnesses § 2859 (NCI4th)— writing used to refresh memory—admission into evidence**

    Rule 612 does not provide for the admission into evidence of writings used to refresh a witness's memory but entitles defend-

STATE v. SHUFORD

[337 N.C. 641 (1994)]

ant only to have such writings produced at trial. The admissibility of these writings is subject to the same rules of admissibility that apply to any evidence. N.C.G.S. § 8C-1, Rule 612.

**Am Jur 2d, Witnesses §§ 459 et seq.**

3. **Evidence and Witnesses § 2124 (NCI4th)— opinion testimony about gunshot wound—failure to qualify as lay witness or expert**

The trial court did not abuse its discretion by refusing to admit opinion testimony of an emergency medical technician concerning the distance from which the victim was shot without some showing by defendant that the witness was qualified to testify about gunshot wounds, either as a lay witness or as an expert, where defense counsel stated that the technician's notation on the ambulance report, "burns to shirt/close distance," was the substance of his testimony; defense counsel admitted to the court that he knew nothing about the qualifications of the witness except his place of employment and that he had signed the ambulance call report; and defendant declined an invitation by the trial court to locate the witness and obtain some information that would support his qualification to testify about guns and gunshot wounds. N.C.G.S. § 8C-1, Rule 701.

**Am Jur 2d, Expert and Opinion Evidence §§ 53, 54, 70.**

4. **Homicide § 445 (NCI4th)— instructions—intentional use of deadly weapon—proof by State or by admission—inference of malice and unlawfulness**

The trial court did not err by instructing the jury in a murder trial that it could infer malice and unlawfulness "if the State proved" or "if it is admitted" that defendant intentionally used a deadly weapon where defendant testified at trial that he pulled out his gun and shot the victim.

**Am Jur 2d, Homicide §§ 508 et seq.; Trial §§ 1293 et seq.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Griffin, J., at the 13 October 1992 Criminal Session of Superior Court, New Hanover County. Heard in the Supreme Court 14 April 1994.

*Michael F. Easley, Attorney General, by Michael S. Fox, Associate Attorney General, for the State.*

*Nora Henry Hargrove, for defendant-appellant.*

**STATE v. SHUFORD**

[337 N.C. 641 (1994)]

FRYE, Justice.

Defendant was indicted for the first-degree murder of Kenneth Lee Hill. He was tried noncapitally by a jury, found guilty as charged, and sentenced to a mandatory term of life imprisonment. Defendant appealed to this Court asserting four assignments of error. We find no reversible error.

The evidence at trial tended to show the following: At about 2:00 a.m. on 9 July 1992, Officer William Caulk of the Wilmington Police Department responded to a call at the Jervay Housing Project in Wilmington. When the officer arrived, he observed the body of the victim, Kenneth Lee Hill, lying in the street. There was a two-foot-long stick lying beside the body and a fired 20-gauge shotgun shell about forty feet from the victim on the sidewalk.

Investigator Brian Pettus testified that he arrived at the crime scene at about 2:15 a.m. He observed the victim's body lying in the street and began to talk to some of the people gathered in the area. Pettus then went to defendant's home, took defendant into custody, and transported him to the police department. Pettus then went to the morgue and observed the body of the victim. He examined the victim's clothing and discovered a rock of crack cocaine in his pocket. The victim had no weapons on him at that time.

At the police department, Pettus observed other officers advising defendant of his Miranda rights. Defendant then gave a statement to the officers. In his statement, defendant said that he left his mother's house about 1:15 to 1:30 a.m. and walked to the playground area of the housing project. Defendant stated that he was approached by the victim, Michael Ellis, and two other young black males whom he did not know. The victim told defendant that he wanted his money. Defendant said he did not know what the victim was talking about. The victim hit defendant in the jaw, and defendant gave him twelve dollars and walked away. Defendant stated that the four men approached him again later and beat him up. Defendant ran away and went to get his gun, a 20-gauge shotgun. Defendant saw the victim and his companions on Wright Street and waited for them to approach him. Defendant said the victim had a stick in his hand and the other three had bottles. The victim asked defendant about the rest of his money. Defendant then pulled the shotgun out in front of him and said, "I got your money." Defendant stated that the victim turned and told the others to give defendant back his money. The others started running away, and when the victim turned back around, defendant

shot him. Defendant stated that he ran and threw the gun behind a house. Defendant then walked to a gas station, purchased two buns and a cigarette and then walked to his mother's house.

Pettus testified that during the time that defendant was giving his statement, defendant was calm and did not have any injuries. Pettus asked defendant if he had any injuries, and defendant said he did not. Pettus returned to the crime scene and searched for weapons but did not find any.

Autopsy results revealed that the cause of death was a shotgun wound to the chest. There were physical indications that the gunshot . occurred at close range.

Michael Ellis testified for defendant. Ellis testified that he and the victim approached defendant to get fifteen dollars defendant owed them. After defendant refused to give them any money, the victim hit defendant in the jaw, and defendant then gave them five dollars. The three men started walking down the street together, and defendant and the victim continued arguing over the money. At one point, the victim hit defendant in the back of the head, and defendant left. Ellis testified that he and the victim approached defendant about an hour later, and the victim asked defendant if he had the rest of the money. Defendant said, "I don't have no money, . . . but I got this," and then pulled the shotgun out and shot the victim. Ellis testified that the victim had a stick in his hand, but did not use it as a weapon.

Defendant testified in his own behalf. Defendant's testimony regarding the events leading up to the shooting was substantially the same as the statements police officers testified that he gave after his arrest. Defendant's version of the shooting differed from the earlier statements. Defendant testified that as he was walking down the street he saw the other men approach him. Defendant saw the victim pick up a stick, and he saw Ellis with a bottle in his hand. When the victim asked where the rest of the money was, defendant said he did not have any money and pulled out the shotgun. The victim then told Ellis to give defendant his money. Defendant looked towards Ellis, and when he turned back, the victim was threatening him with a stick. Therefore, he shot the victim to keep the victim from hurting him with the stick.

Defendant testified that his mother called the police after she learned what had happened and told defendant that he must turn himself in. Defendant testified that he told Investigator Pettus that he did

not have any other choice but to shoot the victim. Defendant denied ever telling the police that the victim could not have hit him with the stick.

[1] Defendant first assigns error to the trial court's instruction to the jury that defendant admitted facts in the case, despite the fact that defendant repeatedly maintained that the killing was in self-defense. The trial court instructed the jury in accord with the North Carolina Pattern Jury Instructions as follows:

> There is evidence in this case which tends to show the defendant has admitted facts relating to the crime charged in this case. If you find that the defendant made that admission, you should treat—or you should consider all of the circumstances under which it was made, in determining whether it was a truthful admission and the weight that you will give to it.

See N.C.P.I.—Crim. 104.60 (1970). During the portion of the instruction on first-degree murder addressing the issue of intent and malice, the trial court, again following the pattern jury instructions, instructed the jury as follows:

> If the State proves beyond a reasonable doubt, or if it is admitted that the defendant intentionally killed the victim with a deadly weapon, or the defendant intentionally inflicted a wound upon the deceased with a deadly weapon that proximately caused the victim's death, you may infer first, that the killing was unlawful; and second, that it was done with malice. You are not compelled, however, to do so. You may consider this, along with all other facts and circumstances, in determining whether the killing was unlawful and whether it was done with malice.

See N.C.P.I.—Crim. 206.30 (1994). Defendant contends that these instructions were "plainly erroneous, were not warranted by the evidence, lightened the state's burden of proof and seriously undermined the defense." Defendant argues specifically that the evidence did not support the trial court's characterization of defendant's statements as "admissions" and that this statement was an expression of the judge's opinion. According to defendant, the jury was allowed to conclude from this instruction that defendant had already "admitted" the crime and, therefore, the State was not required to prove each of the elements of the offense beyond a reasonable doubt.

Defendant did not object to these instructions, therefore this assignment of error must be considered under the plain error rule.

STATE v. SHUFORD

[337 N.C. 641 (1994)]

"Under the plain error rule, a new trial will be granted for an error to which no objection was made at trial only if a defendant meets a heavy burden of convincing the Court that, absent the error, the jury probably would have returned a different verdict." *State v. Bronson*, 333 N.C. 67, 75, 423 S.E.2d 772, 777 (1992) (citing *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983)).

We considered this issue in *State v. McKoy*, 331 N.C. 731, 417 S.E.2d 244 (1992), where defendant argued that an essentially identical instruction on admitted facts was erroneous. As in the present case, defendant in *McKoy* argued that the trial judge expressed an opinion on the evidence when he used this instruction. In *McKoy*, we concluded that "[a] trial court's use of the words 'tends to show' in reviewing the evidence does not constitute an expression of opinion on the evidence." *McKoy*, 331 N.C. at 733, 417 S.E.2d at 246 (citing *State v. Young*, 324 N.C. 489, 495, 380 S.E.2d 94, 97 (1989)). We further concluded that there was evidence "tending to show" that defendant had admitted shooting into the victim's car. Likewise, in the present case, there was evidence tending to show that defendant admitted facts relating to the crime charged. On direct examination, defendant testified that he pulled out his gun and shot the victim.

We also note that in the present case, as in *McKoy*, the court's statement that there was evidence tending to show that defendant had admitted facts relating to the crime charged was followed by the instruction, "If you find that the defendant made that admission, you should treat—or you should consider all the circumstances under which it was made, in determining whether it was a truthful admission and the weight that you will give to it." The court thus made it clear that "it was solely for the jury to determine whether the defendant had in fact made any admission." *McKoy*, 331 N.C. at 734, 417 S.E.2d at 247.

This Court has also previously considered when it is appropriate to instruct on admissions in the pattern instruction on murder. *State v. McCoy*, 303 N.C. 1, 277 S.E.2d 515 (1981); *State v. Wilkins*, 297 N.C. 237, 254 S.E.2d 598 (1979). We concluded in both those cases that the instruction (N.C.P.I—Crim. 206.30) was not prejudicial and, in *McCoy* stated, "[w]e are satisfied the jury understood the instruction to be, as it was intended to be, simply a statement of an abstract legal principle, not the trial judge's expression of an opinion regarding defendant's testimony." *McCoy*, 303 N.C. at 29, 417 S.E.2d at 535. We did caution that "[t]he instruction, 'or it is admitted,' should not be given

in a case where the defendant does not in open court admit to an intentional shooting." *Id.* As we have already stated, defendant testified at trial that he pulled out his gun and shot the victim. It was therefore not improper for the trial court to give this instruction.

We find no error in the above instructions and, consequently, no plain error. This assignment of error is rejected.

[2] In his second assignment of error, defendant contends that the trial court erred in denying the admission into evidence of defendant's exculpatory statements to police officers. Officer Pettus testified on direct examination that defendant made certain voluntary statements to him at the police department several hours after the shooting. On cross-examination, defendant attempted to question Pettus regarding prior statements defendant had made at his home. The State objected on the basis of hearsay, and the objection was sustained. Defendant contends that he was attempting to elicit from Pettus that defendant had told him that "he had to shoot Hill, he had no other choice." Defendant argues that the statement was included in notes and reports used by Officer Pettus while he was testifying. Defendant contends that under Rule 612 of the North Carolina Rules of Evidence, he should have been able to introduce parts of the notes and reports into evidence. We disagree.

Rule 612 provides:

(a) While testifying.—If, while testifying, a witness uses a writing or object to refresh his memory, an adverse party is entitled to have the writing or object produced at the trial, hearing, or deposition in which the witness is testifying.

N.C.G.S. § 8C-1, Rule 612 (1992). Rule 612 does not provide for the admission into evidence of writings used to refresh a witness' memory. Under Rule 612, defendant was only entitled to have such writings *produced* at trial. The *admissibility* of these writings is subject to the same rules of admissibility that apply to any evidence. Here, the trial court excluded the evidence as inadmissible hearsay. Defendant does not contest the trial court's ruling based on the hearsay objection and poses no arguments in support of admissibility under any exception to the hearsay rule. In fact, defendant makes no argument in his brief for the admissibility of the statement other than the argument based on Rule 612. Since the statement was not admissible under Rule 612, we cannot conclude that the trial court erred by excluding it. This assignment of error is therefore rejected.

**[3]** In his third assignment of error, defendant contends that the trial court erred in requiring the defense to tender a witness as an expert before allowing the witness to testify. As his final witness at trial, defendant offered the testimony of Joe Grisetti, an emergency medical technician, who had signed a report regarding the transfer of the victim's body to the morgue. On voir dire, defendant stated that he planned to offer Grisetti as a lay witness with an opinion on the distance from which the victim was shot, based on Grisetti's observation of the wound and powder burns around the wound. The State objected to Grisetti's lay opinion testimony on this issue. The trial court inquired as to whether defendant would qualify Grisetti as a firearms expert, a medical expert, or "any other kind of expert." Defendant replied that he would tender him simply as a lay witness. Defendant's attorney acknowledged to the court that he had not spoken to Grisetti and did not know what training he had; only that he was employed with the New Hanover County Emergency Medical Services. The court indicated that it would give defendant an opportunity to locate Grisetti, talk with him and question him on the stand to attempt to have him qualified as an expert. Defendant declined this offer. Defendant now argues that the trial court erred by not allowing Grisetti to testify as a lay witness regarding the distance from which the victim was shot.

The State argues that this issue has not been preserved for appellate review because defendant failed to make an adequate offer of proof. We have previously stated that "an exception to the exclusion of evidence cannot be sustained where the record fails to show what the witness' testimony would have been had he been permitted to testify." *State v. Simpson,* 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985) (citations omitted). We noted in *Simpson* that, "[t]he practice of permitting counsel to insert answers rather than have the witness give them in the presence of the court should not be encouraged. The words of the witness, and not the words counsel thinks the witness might have used, should go in the record." *Id.* (quoting *State v. Willis,* 285 N.C. 195, 200, 204 S.E.2d 33, 36 (1974)).

In the present case, not only was counsel attempting to insert answers into the record rather than having the witness give them, but counsel was attempting to do this without having had any contact or discussion with the witness. On voir dire, counsel for defendant stated that he was making an offer of proof in the form of the ambulance call report which was signed by Joe Grisetti, and the report was placed in the record as a voir dire exhibit. Defendant argued that the

notation on the report, "burns to shirt/close distance," was the substance of the testimony that would allow the jury to determine the distance from which the gunshot was fired.

Assuming that this notation in the report sufficed as an offer of proof on the substance of Grisetti's testimony, there remained the question of Grisetti's qualification as a witness on this issue. Rule 104(a) of the North Carolina Rules of Evidence provides that "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court." N.C.G.S. § 8C-1, Rule 104(a) (1992). Decisions made under Rule 104(a) are addressed to the sound discretion of the trial court. *See State v. Fearing*, 315 N.C. 167, 337 S.E.2d 551 (1985). "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986).

Rule 701 addresses opinion testimony by lay witnesses as follows:

> If a witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C.G.S. § 8C-1, Rule 701 (1992). Defendant made no showing that the proffered opinion testimony was rationally based on the perception of the witness or that it would be helpful to a determination of the issue of the distance from which the victim was shot. In fact, as noted above, defense counsel candidly admitted to the court that he knew nothing about the witness' qualifications, except the witness' place of employment and that he signed the ambulance call report.

At oral argument, defendant acknowledged that a layperson could provide this type of opinion testimony "if he was familiar with guns and gunshot wounds." Yet, no such information regarding the qualifications of the witness to provide this opinion testimony was presented to the trial court. Further, defendant declined an invitation by the trial court to locate the witness and obtain some information that would support his qualification to testify on this subject. Although the trial court questioned defense counsel regarding the witness' qualification as an expert and ultimately ruled that it was "inclined to sustain the state's objection to testimony from a lay wit-

ness as to that kind of thing," defendant certainly had the opportunity to provide support for the witness testifying as a lay witness or as an expert. Defendant has failed to demonstrate that the trial court abused its discretion by refusing to admit this testimony without some showing that the witness was qualified to testify, either as a lay witness or as an expert. This assignment of error is rejected.

[4] In his final assignment of error, defendant contends that the trial court erred in its instruction on the inference of malice and unlawfulness from the use of a deadly weapon and thereby lightened the State's burden of proof on each element of the crime. Defendant relies primarily on his discussion under the first assignment of error regarding the reference to "admissions" in the instruction on the elements of murder. Defendant argues that the trial court's instruction that the jury could use an admission to infer that the killing was unlawful and that it was done with malice, impermissibly lightened the State's burden of proving these elements beyond a reasonable doubt. As noted above, defendant's assignments of error regarding this instruction must be considered under the plain error rule, since defendant did not object to the instruction at trial.

A careful reading of this instruction shows that the jury was told that it could infer malice and unlawfulness "if the State proved" or "if it is admitted" that defendant used a deadly weapon. Thus, the jury could only make these inferences if it first determined that there was an admission or proof beyond a reasonable doubt. We have already stated that the "admission" instruction was not improper in this case, since defendant testified at trial that he pulled out his gun and shot the victim. Further, it is well established that malice and unlawfulness may be inferred from the intentional use of a deadly weapon which proximately results in a death. *See State v. Weeks*, 322 N.C. 152, 173, 367 S.E.2d 895, 907-08 (1988) (citing *State v. Reynolds*, 307 N.C. 184, 190, 297 S.E.2d 532, 536 (1982)). We conclude that the trial court did not err in instructing the jury that these inferences could be drawn from defendant's use of a deadly weapon.

For the foregoing reasons, we hold that defendant received a fair trial free of prejudicial error.

NO ERROR.