STATE OF NORTH CAROLINA v. KENDALL JERMAINE BARNETT

No. COA99-1305

(Filed 29 December 2000)

## 1. Homicide— first-degree murder—sufficiency of evidence

The trial court did not err by denying a first-degree murder defendant's motions to dismiss and to set aside the verdict where defendant's statements place him at the store where the murder occurred on the morning of the murder, place defendant as having access to the victim during the moments after the victim was bludgeoned, and may be considered as tending to reflect the mental processes of a person possessed of a guilty conscience seeking to divert suspicion and to exculpate himself. Although defendant attacks the forensic evidence and the evidence of motive, his statements concerning his presence and the things he touched make a conclusive match on footprints or fingerprints unnecessary and the State presented evidence permitting the inference that defendant was in need of money.

## 2. Criminal Law— instructions—admissions

There was no plain error in a felony murder prosecution where the court charged the jury on admissions. Defendant's objection at trial was that the instruction was superfluous and he thereby waived appellate assertion that the charge violated his common law and constitutional rights. His statements were in the nature of an admission because they were incriminating in light of the other evidence presented, but, assuming the instruction was improper, it cannot be said that the jury likely would have returned a different result without the instruction because the court neither defined nor intimated what defendant's admissions

STATE v. BARNETT

[141 N.C. App. 378 (2000)]

may have been and left to the jury's discretion the determination of which statements were admissions and the weight to be given those statements.

**3. Evidence— defendant's drug use and prior crime—admissible as to motive**

There was no plain error in a felony murder prosecution arising from the robbery of a store where the State was allowed to cross-examine defendant about a prior forgery conviction and about his drug and alcohol use. The State exceeded the permissible scope of inquiry into defendant's prior criminal conviction under N.C.G.S. § 8C-1, Rule 609(a) by eliciting details other than the name, time, and place of the crime and the punishment, but the evidence was admissible under Rule 404(b) to explain the chain of events leading to and the motive behind the crime (support of a drug habit). The fact that the forgery occurred several years before this crime goes to the weight of the evidence rather than its admissibility.

**4. Criminal Law— prosecutor's closing argument—defendant as selfish**

The trial court did not err by not intervening ex mero motu in a prosecutor's closing argument in a felony murder prosecution where the prosecutor argued that defendant was a selfish person who committed this crime for money to support his drug habit.

**5. Homicide— first-degree murder—short-form indictment**

The short-form indictment used in a felony-murder prosecution complied with N.C.G.S. § 15-44 and did not violate defendant's constitutional rights.

Judge TIMMONS-GOODSON dissenting.

Appeal by defendant from judgment entered 2 December 1998 by Judge Jesse B. Caldwell, III in Gaston County Superior Court. Heard in the Court of Appeals 9 October 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Anne M. Middleton, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Anne M. Gomez, for defendant-appellant.*

STATE v. BARNETT

[141 N.C. App. 378 (2000)]

EAGLES, Chief Judge.

Defendant Kendall Jermaine Barnett was tried and found guilty of first-degree felony murder in Gaston County Superior Court on 2 December 1998. From a sentence imposing life imprisonment without parole, defendant appeals. After careful review, we conclude defendant received a fair trial free from prejudicial error.

The evidence presented at trial tended to show that shortly after 9:00 a.m. on 17 July 1996, customers of the Simply Amazing Grocery Store (store) in Gastonia, North Carolina found Max Hightower (victim), a store employee, dead behind the counter. At the time, the store cash register was emitting a beeping sound. Store owner Burgin Lindley (Lindley) testified that when someone improperly tries to open the cash register it emits a steady beep. Lindley further testified that when he arrived at the store shortly after the victim's body was discovered, approximately sixteen to twenty-four dollars in cash was missing from under the counter.

Gastonia Police Officers arrived at the store at approximately 9:30 a.m. While conducting their investigation, the police found a shoe impression in the blood on the floor around the victim's body. The police also found a bloody shoe impression on the white T-shirt the victim was wearing in his lower abdomen area. A State Bureau of Investigation (SBI) expert later compared photographs of these footprints with shoes owned by defendant. The SBI expert was unable to make a conclusive identification by comparison to defendant's shoes, but found defendant's shoes consistent with the bloody footprints. Although there was no indication that defendant's shoes had been washed, they did not test positive for blood residue. An SBI expert testified that blood may be removed from "wear surfaces of the soles . . . in a short time by walking." In addition, he testified that walking in the rain would probably be sufficient to remove blood from the soles of shoes. Moreover, the SBI examined shoes taken from another suspect the Gastonia police initially considered, and were able to eliminate the shoes as having left the prints in the blood at the store.

Police obtained several latent fingerprints from the store, including from the store counter, the register and boxes around the counter. No identifications could be made with these prints.

Outside the store police found a large wooden stick with blood, hair, and tissue on the end. Lindley testified that the stick the police

found outside the store was for his dog to play with and was normally kept on top of a drink machine in the store. Lindley further testified that the stick was actually more like a "club," big around at the top and "tapered down a little bit." SBI forensics experts later determined that a DNA sample taken from the stick was consistent with the victim's DNA. The pathologist who performed the autopsy on the victim testified that the victim died as a result of an extensive brain injury secondary to multiple blows to the skull. He further testified that death would have resulted within minutes after the wounds were inflicted.

There was testimony that a number of individuals were seen near the store on the morning of the murder. Although the Gastonia police initially considered some of these individuals in connection with the murder, they focused on defendant at the end of July. On 15 August 1996, while defendant was in police custody on another matter, he made a statement to Detective Larry Hardin regarding the murder. Prior to making his statement, defendant was orally advised of, and in writing waived, his *Miranda* rights. Defendant initially denied any involvement with the murder and denied being in the store that day. Detective Hardin then told defendant that the shoes he was wearing had the same sole pattern as the pattern found in the store in the victim's blood. At this point, defendant admitted to having been in the store that morning, but again denied any involvement in the murder. According to defendant, when he went into the store on the morning of 17 July 1996, he saw the victim lying behind the counter still breathing. Defendant walked around the counter to the victim to see if he was alright. Defendant stated that the victim moved his hand, which startled him, causing defendant to "push off" the victim with his foot. Defendant then backed out of the area behind the counter. As he backed away from the victim, defendant hit the cash register, causing some keys to drop. Defendant caught the keys, placed them on the counter and continued to back out from behind the counter. In the process, defendant bumped into a cigarette display, grabbed a pack of the cigarettes and continued toward the door of the store. Defendant then stated that he stepped on a bloody stick lying on the floor, which he picked up and threw on the grass outside the store as he ran outside.

At trial, defendant testified that he did not contact the police after leaving the store because he "didn't want to be mixed up in it." In addition, defendant testified that he initially told the police that he had not been at the store on the morning of 17 July 1996, because he

"didn't want to have anything to do with it," and because there was an outstanding arrest warrant for him.

**[1]** On appeal defendant first argues that the trial court erred in denying his motions to dismiss and set aside the verdict. Defendant contends that the State presented insufficient evidence to sustain his conviction for first-degree felony murder. To support his contention, defendant argues that there is a lack of direct evidence in the form of eyewitnesses and physical evidence, and no proof of motive. We are not persuaded.

To convict a defendant of murder, the State must " 'offer evidence from which it can be reasonably inferred that the deceased died by virtue of a criminal act and that the act was committed by the defendant.' " *State v. Lambert,* 341 N.C. 36, 42, 460 S.E.2d 123, 126 (1995) (quoting *State v. Furr,* 292 N.C. 711, 718, 235 S.E.2d 193, 198, *cert denied,* 434 U.S. 924, 54 L. Ed. 2d 281 (1977)); *State v. Vause,* 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). Here it is undisputed that the victim died by virtue of a criminal act. The issue here is whether the State presented sufficient evidence tending to show that it was defendant who committed the criminal act.

It is well settled in this State that a conviction on evidence which merely gives rise to suspicion or conjecture that it was the defendant who committed the crime will not stand. *State v. Sokolowski,* 351 N.C. 137, 143, 522 S.E.2d 65, 69 (1999); *Lambert,* 341 N.C. at 42, 460 S.E.2d at 127. However, it is equally clear that if there is substantial evidence, whether it is direct, circumstantial, or both, that it was the defendant who committed the crime, a motion to dismiss must be denied. *Lambert,* 341 N.C. at 42, 460 S.E.2d at 127. Our Supreme Court has described "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith,* 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980); *State v. Cox,* 303 N.C. 75, 87, 277 S.E.2d 376, 384 (1981). When considering a motion to dismiss, the trial court must view the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from that evidence. *Lambert,* 341 N.C. at 42, 460 S.E.2d at 127; *State v. Stone,* 323 N.C. 447, 451-52, 373 S.E.2d 430, 433 (1988). "Contradictions and discrepancies must be resolved in favor of the State," *State v. Bullard,* 312 N.C. 129, 160, 322 S.E.2d 370, 388 (1984), and the trial court is not to consider defendant's evidence rebutting the inference of guilt "except to the extent that it explains, clarifies or is not inconsistent with the

State's evidence . . . ." *State v. Walker*, 332 N.C. 520, 530, 422 S.E.2d 716, 722 (1992). Thus, the evidence need only give rise to a reasonable inference of guilt for the case to be properly submitted to the jury. Here, we conclude that when viewed in the light most favorable to the State, substantial evidence of first-degree murder was presented to sustain defendant's conviction.

Defendant relies heavily on *State v. Bell*, 65 N.C. App. 234, 309 S.E.2d 464 (1983), *aff'd per curium*, 311 N.C. 299, 316 S.E.2d 72 (1984) to support the argument that there was insufficient evidence to show that he committed the crime charged. In *Bell*, the defendant was convicted of second-degree murder. We held that the evidence, when taken in the light most favorable to the State, at most showed that the defendant had a non-exclusive opportunity to kill the victim, and that standing alone was insufficient to survive a motion to dismiss. *Id.* at 241, 309 S.E.2d at 469. In *Bell*, "[t]he only substantial evidence linking defendant to the crime consisted of the victim's keys which were found in the defendant's pockets." *Id.* Here there is more evidence.

Defendant's statements, both to the police and at trial, place him at the store on the morning of the murder. Defendant initially denied being present at the store on the morning the murder took place. When defendant eventually admitted to being in the store that morning, he related a story that a reasonable juror could infer was designed to explain the presence of his fingerprints at the crime scene. Although defendant contends that he happened upon the victim after the fatal head wound was inflicted, this argument is premised upon the possibility that another person struck the fatal blows just prior to defendant's arrival at the store. The forensic pathologist, however, testified that the victim could only have survived a matter of minutes after the infliction of the head wounds. Thus, defendant's statements that he did not see anyone else in the store on the morning of the murder, that the victim was still alive when he saw him lying behind the counter, and that he picked up the stick containing the victim's hair, blood and tissue, all place defendant as the person who had access to the victim during the crucial moments that he could have survived after being bludgeoned. From this, a reasonable juror could find that defendant inflicted the fatal blows.

Although defendant acknowledges that his statements to the police were inconsistent, he maintains that they were "wholly excul-

patory" and that he made his initial false statement because he feared involvement with the police. In *State v. Walker*, 332 N.C. 520, 537, 422 S.E.2d 716, 726 (1992) (quoting *State v. Myers*, 309 N.C. 78, 86, 305 S.E.2d 506, 511 (1983)), our Supreme Court stated that "false, contradictory or conflicting statements made by an accused may be considered as a circumstance tending to reflect the mental processes of a person possessed of a guilty conscience seeking to divert suspicion and to exculpate [himself]." Thus, here as in *Walker*, defendant's statements were used by the State to prove guilt by implication.

Defendant also attacks the State's forensic evidence. The State presented evidence that the shoe prints found on the floor of the store and on the victim's shirt were consistent with the shoes which defendant admitted wearing on the day of the murder. Defendant, however, argues that the State's evidence does not lead to a reasonable inference that it was he who left the footprints on the morning of the murder because a conclusive match was not made to his shoes. By his own assertion, defendant stepped in the blood surrounding the victim and "pushed off" the victim with his foot. Thus, defendant's statements obviate the need for a conclusive match on the footprints. In addition, although the police were unable to match fingerprints taken in the store to defendant, this was also unnecessary as defendant admitted to touching the cash register, cash register key, store counter and the murder weapon.

Defendant further contends that the State presented insufficient evidence of motive to sustain his conviction. Motive may be proved by circumstantial evidence. Here, the State presented evidence in the form of defendant's testimony that he had been unemployed for several months prior to the murder; that he was no longer living with relatives due to familial strain; that he had been drinking and using marijuana and cocaine frequently prior to the murder; that he had been drinking beer and "maybe" using marijuana the night before the murder; and that he had only "some loose change" in his possession on the morning of the murder. In the light most favorable to the State, this testimony permitted the inference that defendant was in need of money and robbed and murdered the victim to obtain that money. *State v. Powell*, 340 N.C. 674, 690, 459 S.E.2d 219, 227 (1995), *cert. denied*, 516 U.S. 1060, 133 L. Ed. 2d 688 (1996).

The foregoing evidence, in addition to other evidence adduced at trial, is sufficiently substantial for a jury to draw a reasonable inference that defendant was the perpetrator of the crime of first-degree murder. Accordingly, this assignment of error fails.

**[2]** Defendant next contends that the trial court erred in charging the jury on admissions pursuant to North Carolina Pattern Jury Instruction 104.60. We disagree.

During the jury charge conference, the State requested that the trial court instruct the jury on admissions pursuant to N.C.P.I 104.60. At that time, defendant objected to the jury instruction as being "superfluous." The trial court overruled defendant's objection and explained why the instruction on admissions was appropriate:

> [The] admissions that I'm talking about are admissions about being present in the grocery store on the morning of the homicide, the admission that he went behind the counter, the admission that he had contact—that the defendant kicked the—or pushed away with his foot the victim's hand, the fact that he was standing in blood or had his shoe print in blood, the fact that he picked up a stick which had blood and tissue on it which has been identified as being consistent with that of the victim and removed it and took it outside, the fact that he admitted to taking a pack of cigarettes without paying for them, and those—and perhaps some other admissions. Of course, this charge does not explain to the jury what the admissions are. You are free to argue that one way or the other . . . .

The trial court subsequently instructed the jury, in pertinent part:

> Members of the jury, there is evidence which tends to show that the defendant has admitted a fact relating to the crime charged in this case. If you find that the defendant has made that admission, then you should consider all of the circumstances under which it was made in determining whether it was a truthful admission and the weight that you will give to it.

Defendant contends on appeal that the instruction on admissions "was not supported by the evidence, diluted the State's burden of proving defendant guilty beyond a reasonable doubt, and was highly prejudicial" thereby violating defendant's rights "under our common law, the Fourteenth Amendment to the U.S. Constitution, and Article I, § 19 of the North Carolina Constitution."

On appeal, a party may not assign as error a jury charge unless a proper objection was made at trial prior to the jury retiring to deliberate. *State v. Cummings*, 326 N.C. 298, 315, 389 S.E.2d 66, 75 (1990); N.C. R. App. P. 10(b)(2). Here, before the jury charge, defendant objected to the instruction as "superfluous." Defendant now asserts

that the jury charge violated his rights under our common law as well as the United States and North Carolina Constitutions. By failing to object on these bases at trial, defendant has waived these grounds on appeal.

In exceptional criminal cases, however, the "plain error" rule may be applied to allow a party relief even though no objection, or an improper objection, was made at trial. *Cummings*, 326 N.C. at 315, 389 S.E.2d at 75; *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). The "plain error" rule provides that

> [i]n criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule of law . . . may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C. R. App. P. 10(c)(4). Our Supreme Court has held that when deciding whether a defect in a jury instruction amounts to "plain error," the appellate court "must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Odom*, 307 N.C. at 661, 300 S.E.2d at 378-79. However, our Supreme Court has also cautioned that the "plain error rule" is "always to be applied cautiously and only in the exceptional case . . . ." *Id.* at 660, 300 S.E.2d at 378 (quoting *State v. McCaskill*, 676 F.2d 995, 1002 (4th cir. 1982)).

Our Supreme Court has described an admission as a "statement of pertinent facts which, in light of other evidence, is incriminating." *State v. Lambert*, 341 N.C. 36, 50, 460 S.E.2d 123, 131 (1995) (quoting *State v. Trexler*, 316 N.C. 528, 531, 342 S.E.2d 878, 879-80 (1986)). Defendant's statements to the police on 15 August 1996 are in the nature of an admission. *State v. Smith*, 40 N.C. App. 72, 252 S.E.2d 535 (1979).

In *State v. Smith*, defendant was convicted of voluntary manslaughter. The victim, defendant's wife, was found dead in their home on the morning of 17 December. *Id.* at 73, 252 S.E.2d at 536. The *Smith* defendant made a statement to the police in which he stated that he was at his home with his wife for the entire night of 16 December. Thus, the defendant's statement placed him at the "scene of the crime and in the company of the victim." *Id.* at 81, 252 S.E.2d at 541. Although defendant denied killing his wife and asserted that his statements were exculpatory as they tended "to show that some-

one else may have had the opportunity to kill" her, we described the defendant's statement as "in the nature of an admission." *Id.* at 83-84, 252 S.E.2d at 541. Likewise, here defendant's statement to the police placed him at the scene of the crime and in the company of the victim on the morning of the murder. Defendant acknowledged that he did not see anyone in the store other than the victim. When considered in light of the other evidence presented at trial, especially evidence that the victim could have survived only briefly after the infliction of the fatal wound, this statement is incriminating. Under our language in *Smith*, therefore, defendant's statement is in the nature of an admission.

Assuming *arguendo* that the instruction was improper, we conclude that defendant has failed to show "plain error." *State v. Shuford*, 337 N.C. 641, 646, 447 S.E.2d 742, 745 (1994). In the jury charge, the trial court neither defined nor intimated what defendant's admissions may have been. The language of the jury charge also left to the jury's discretion the determination of which of defendant's statements were admissions and the weight to be given those statements. Because the jury charge on admissions was based upon facts presented by a reasonable view of the evidence, we cannot say that absent the instruction the jury likely would have returned a different verdict. Defendant has failed to meet the " 'heavy burden of convincing the Court that, absent the error, the jury probably would have returned a different verdict.' " *Id.* (quoting *State v. Bronson*, 333 N.C. 67, 75, 423 S.E.2d 772, 777 (1992)). Accordingly, this assignment of error fails.

[3] Defendant next argues that the trial court committed "plain error" by allowing the State to cross-examine defendant about the details of a prior conviction and his drug and alcohol use and to engage in an improper closing argument. As previously discussed, a failure to object or except to errors at trial constitutes a waiver of the right to assert the alleged error on appeal unless the defendant can show "plain error." *State v. Oliver*, 309 N.C. 326, 340, 307 S.E.2d 304, 311-12 (1983). Here, defendant argues that under the "plain error" standard he is entitled to a new trial on these grounds. We cannot agree.

During the State's cross-examination of defendant the prosecutor inquired, without objection, about defendant's forgery conviction and his drug and alcohol use. The following are pertinent excerpts from defendant's cross-examination:

Q. You were convicted for possession of stolen property?

A. Yes.

Q. And forgery and—and forgery?

A. Yes.

. . . .

Q. What was the purpose of forging the instruments that were forged? What did you need the money for?

A. Bills, really.

. . . .

Q. Your forgery activities were not to support your drug habit?

A. No.

Q. How would you support your drug habit?

A. Probably from the money that I was making at the job, partly of it.

. . . .

Q. Now you had your job, and you were gainfully employed, and you earned a livelihood that was sufficient to support your drug habit?

A. Um-hum.

Q. But then you say you had to engage in this forgery activity so you could get additional funds to pay off your expenses for the household that you maintained.

A. Right.

Defendant argues this line of questioning was impermissible under the North Carolina Rules of Evidence.

When a defendant elects to testify, evidence of prior convictions is admissible for the purpose of impeaching defendant's credibility pursuant to Rule 609 of the Rules of Evidence. Rule 609(a) provides that

[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a felony, or of a Class A1, Class 1, or Class 2 misdemeanor, shall be admitted if

elicited from the witness or established by public record during cross-examination or thereafter.

G.S. § 8C-1, Rule 609(a) (1999). This rule was recently interpreted in *State v. Lynch*, 334 N.C. 402, 432 S.E.2d 349 (1993).

In *Lynch*, our Supreme Court held that the State is prohibited "from eliciting details of prior convictions other than the name of the crime and the time, place, and punishment for impeachment purposes under Rule 609(a) in the guilt-innocence phase of a criminal trial." *Id.* at 410, 402 S.E.2d at 353. However, the *Lynch* Court went on to discuss certain exceptions to this exclusionary rule, including Rule 404(b) of the North Carolina Rules of Evidence.

Here it is clear that the State exceeded the permissible scope of inquiry into defendant's prior criminal conviction under Rule 609(a). On cross-examination the State asked defendant whether he had been convicted of possessing stolen property and forgery. When defendant answered affirmatively, the State proceeded to delve into defendant's motivation for his "forgery activity." Thus, the State elicited "details of prior convictions other than the name of the crime and the time, place, and punishment," *id.*, allowable for impeachment purposes. However, that the evidence could not be admitted pursuant to Rule 609(a) does not preclude its admission under an alternative Rule of Evidence.

Rule 404(b) of the North Carolina Rules of Evidence provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acts in conformity therewith. It may, however, be admissible for other purposes, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake . . . .

G.S. § 8C-1, Rule 404(b) (1999). Our Supreme Court has held that Rule 404(b) states

> a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990); *State v. King*, 343 N.C. 29, 43, 468 S.E.2d 232, 241 (1996). "The admissibility

of evidence under this rule is guided by two further constraints—similarity and temporal proximity." *Lynch*, 334 N.C. at 412, 432 S.E.2d at 354.

Here, we agree that this testimony was relevant on the issue of defendant's motive. On direct examination, defendant testified that between January 1996 and July 1996, when the murder occurred, he was using drugs and/or alcohol "frequently." Defendant further testified that on the night before the murder took place he was drinking beer and "maybe" using a "little marijuana." On cross-examination, the State further questioned defendant about his drug habit, and about his means of financing that drug habit. The evidence that defendant previously committed forgery to finance his drug habit could properly be admitted, not to show defendant had a propensity to commit forgery or other crimes, but rather to show that his need to support his drug habit and his lack of finances were the motive for the robbery and murder of the victim.

In *State v. Powell*, 340 N.C. 674, 459 S.E.2d 219 (1995), *cert. denied*, 516 U.S. 1060, 133 L. Ed. 2d 688 (1996) the defendant was convicted of first-degree felony murder. At trial, a State's witness testified over defendant's objection that she and defendant used cocaine every day while they were living together. She also testified that during that time neither she nor defendant was employed, and their sole source of income was monthly AFDC and Social Security checks. Our Supreme Court concluded that the trial court properly ruled this evidence admissible pursuant to Rule 404(b). *Id.* at 690, 459 S.E.2d at 227. The *Powell* Court stated that the "evidence permits the inference that defendant needed money once the checks stopped . . . and decided to commit the robbery to obtain that money." *Id.* Here the evidence elicited on cross-examination about defendant's drug use and his prior conviction was admissible under Rule 404(b) because it permits the inference that defendant committed this robbery and murder to obtain money he needed to support his drug habit. As such, this evidence helps explain the chain of events leading up to, and the motive behind, the robbery and murder of Max Hightower.

Our Supreme Court has held that " '[r]emoteness in time is less significant when the prior conduct is used to show . . . motive . . . remoteness in time generally affects only the weight to be given such evidence, not its admissibility.' " *State v. White*, 349 N.C. 535, 553, 508 S.E.2d 253, 265 (1998) (quoting *State v. Stager*, 329 N.C. 278, 307, 406 S.E.2d 876, 893 (1991)). The fact that defendant's conviction for

forgery occurred several years before this crime did not preclude the admissibility of the evidence; instead the passage of time affected the weight to be given that evidence.

After careful review and consideration of the record and briefs, we cannot say that in the absence of this evidence's admission, the jury would have returned a different verdict. Accordingly, we conclude that the trial court did not commit "plain error" with respect to this evidence.

**[4]** Defendant also argues that the trial court committed "plain error" by allowing the State to engage in an improper closing argument. Defendant asserts that the State attempted to prejudice the jury during closing arguments with the following comments:

> [W]e're here because Kendell [sic] Barnett is a selfish person, and . . . a selfish person with a drug problem is a dangerous person . . . .

> In order to support his cocaine habit, he began to write checks, dealt in stolen property . . . .

> Then I got to questioning about the necessity for forged instruments, and then that began to explain well, he needed that money to pay for the daily living expenses . . . He worked at the time, used the money that he earned to support that craving for drugs . . . .

> . . . .

> Kendell [sic] Barnett continues to be a selfish person with an addiction to controlled substances . . . .

> . . . .

> [H]e's a selfish individual, and because he is selfish, Max Hightower is dead and gone to his just reward . . . .

"Prosecutors are allowed 'wide latitude in the scope of their argument.' " *Powell*, 340 N.C. at 694, 459 S.E.2d at 229 (quoting *State v. Zuniga*, 320 N.C. 233, 253, 357 S.E.2d 898, 911, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987)). "A prosecutor's argument is not improper where it is consistent with the record and does not travel into the fields of conjecture or personal opinion." *Zuniga*, 320 N.C. at 253, 357 S.E.2d at 911. If no objection is made, the trial court will only be required to intervene when the prosecutor's argument affects the right of a defendant to a fair trial. *Id.*

Here, since no objection was made during the prosecutor's closing argument, the trial court was required to intervene only if the defendant's right to a fair trial was affected by the closing arguments. After careful review and consideration of the record and briefs, we cannot conclude that the trial court erred in not intervening *ex mero motu* during the argument. Defendant's assignment of error fails.

[5] By his final assignment of error defendant contends that the trial court erred in denying his motion "to reveal the State's first-degree murder theory." Specifically, defendant argues that the short-form murder indictment used here violates his due process and equal protection rights under the United States Constitution. We are not persuaded.

The indictment against defendant for murder contained the following language:

> The jurors for the State upon their oath present that on or about the date of the offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously and of malice aforethought did kill and murder Max M. Hightower.

The indictment also stated: "Offense in violation of G.S. 14-17." Defendant concedes that the indictment complies with the short form murder indictment authorized by G.S. § 15-144 which provides that

> [i]n indictments for murder and manslaughter . . . it is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder (naming the person killed) . . . .

G.S. § 15-144 (1999). Our Supreme Court has held that an indictment which complies with the requirements of G.S. § 15-144 is sufficient to charge murder in the first degree based on any theory set out in G.S. § 14-17 and referenced in the indictment. *State v. Braxton*, 352 N.C. 158, 174, 531 S.E.2d 428, 437 (2000). Moreover, our Supreme Court has consistently held that "indictments for murder based on the short-form indictment statute are in compliance with both the North Carolina and United States Constitutions." *Id.*; *State v. Smith*, 352 N.C. 531, 539, 532 S.E.2d 773, 779 (2000); *State v. Wallace*, 351 N.C. 481, 504-05, 528 S.E.2d 326, 341 (2000). Here, the indictment complied with G.S. § 15-144 and was therefore sufficient. Accordingly, defendant's assignment of error is without merit.

No error.

Judge FULLER concurs.

Judge TIMMONS-GOODSON dissents.

Judge TIMMONS-GOODSON dissenting.

Respectfully, I dissent. While I believe that the evidence presented by the State was sufficient to permit the jury to find that Mr. Hightower was murdered during the commission of an armed robbery, I do not believe that the evidence was sufficient to demonstrate that defendant perpetrated these crimes. Therefore, the trial court should have allowed defendant's motion to dismiss the charge of first-degree murder.

A motion to dismiss is properly denied only "[i]f there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it." *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Pryor*, 59 N.C. App. 1, 5, 295 S.E.2d 610, 614 (1982). Thus, to be "substantial," the evidence of guilt "must be existing and real, not just seeming or imaginary." *State v. Sexton*, 336 N.C. 321, 361, 444 S.E.2d 879, 902 (1994), *grant of post-conviction relief aff'd*, 352 N.C. 336, 532 S.E.2d 179 (2000).

In ruling on a motion to dismiss, the trial court must examine the evidence and draw all reasonable inferences therefrom in the light most beneficial to the State. *State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998). Exculpatory evidence offered by the defendant is not taken into account, except to the extent that it explains, clarifies, or coincides with the State's body of facts. *State v. Bates*, 309 N.C. 528, 535, 308 S.E.2d 258, 262-63 (1983). Additionally, although the propriety of dismissal turns on the peculiar facts of the case under consideration, prior decisions can be instructive as to whether the court should have granted a motion to dismiss given a particular set of circumstances. *See State v. White*, 293 N.C. 91, 235 S.E.2d 55 (1977) (relying on case with strikingly similar facts as support for decision reversing denial of motion for nonsuit).

At trial, the premise of the State's theory was the "felony murder rule," pursuant to which a murder committed during the perpetration

of a felony is "deemed to be murder in the first degree." N.C. Gen. Stat. § 14-17 (1999). According to the State, the underlying felony was armed robbery—the unlawful taking or attempted taking of " 'personal property from another or from any place of business' with the possession, use, or threatened use of a [dangerous weapon]." *State v. Cofield*, 129 N.C. App. 268, 280, 498 S.E.2d 823, 832 (1998) (quoting N.C. Gen. Stat. § 14-87(a)(1993)). Hence, to withstand defendant's motion for dismissal, it was incumbent upon the State to come forward with substantial evidence that defendant killed Mr. Hightower while perpetrating or attempting to perpetrate an armed robbery of the victim or the convenience store. In my judgment, the State failed to meet this burden.

The evidence, viewed in the light most favorable to the State, showed that at or near 9:00 a.m. on the morning of 17 July 1996, defendant entered the Simply Amazing Grocery Store in Gastonia, North Carolina, wearing a pair of black Nike tennis shoes. Minutes later, the body of Max Hightower, an employee of the store, was discovered lying in a pool of blood behind the counter. The victim had been brutally beaten about the head and face. His blood covered the immediate area within three feet of the body and spattered the adjacent wall nearly forty inches up from the floor. Nike shoe impressions consistent with the shoes worn by defendant were found in the blood surrounding the body, and a bloody Nike shoe print was visible on the front of the victim's T-shirt. The cash register emitted a beeping noise, signaling that it had been improperly used, and roughly eight to twelve two-dollar-bills had been taken from a plastic container kept under the counter. A large wooden stick, covered on one end with the victim's blood, was found in a grassy area beside the store.

Defendant, after initially denying his presence, admitted that he had been in the convenience store on the morning of the murder. His statements to the police and his testimony at trial revealed that he arrived at the store after the victim had been attacked. When he saw the victim's body, he went behind the counter to render assistance, but became frightened when the victim's hand moved toward him. Defendant kicked at the victim's chest to keep him from rising. As he backed away from the victim's body, he stumbled over a large stick, knocking a pack of cigarettes onto the floor. In his haste to leave, defendant grabbed the stick and the cigarettes and ran out the door. Once outside, he threw the stick beside the building and fled.

Defendant's evidence further showed that witnesses observed one or more individuals not matching his description waiting in front

**STATE v. BARNETT**

[141 N.C. App. 378 (2000)]

of the store at or near the time of the crimes. Additionally, while the investigation uncovered several latent fingerprints from items on and around the counter, none of the prints collected at the scene were found to match those of defendant. Moreover, in view of the State's theory that defendant's financial needs motivated him to commit these crimes, I think it significant that investigators found a handgun under the counter, several dollars in rolled coins stacked behind the cash register, and nearly $300 in cash in the victim's wallet. Similarly, despite the evidence that the area immediately surrounding the body was covered with the victim's blood, forensic testing did not indicate the presence of blood anywhere on defendant's tennis shoes, nor did the tests reveal that the shoes had been cleaned.

The majority, in concluding that the State's evidence was sufficient to survive defendant's motion to dismiss, failed to give defendant's exculpatory evidence due consideration. In my opinion, the majority's indifference to the evidence tending to absolve defendant of guilt is contrary to our Supreme Court's ruling in *State v. Bates*, 309 N.C. 528, 308 S.E.2d 258. In *Bates*, the defendant was convicted of first-degree murder based on the felony murder rule. The State's theory was that the defendant murdered the victim during his attempt to rob the victim of personal property found at the scene.

The evidence revealed that on the night of the incident, the defendant arrived at the home of Mary Godwin in a battered and agitated state. His "clothing was covered with blood and dirt." *Id.* at 530, 308 S.E.2d at 260. According to Mrs. Godwin, "[the] defendant appeared to be severely injured and was pleading for help." *Id.* In a field approximately 300 feet from the Godwin residence, law enforcement officers found the body of Roy Warren lying next to an automobile. Several scuff marks were visible in the soil surrounding the body, and spots of blood appeared on the side of the car. Articles of personal property belonging to both the defendant and the victim were scattered about an area approximately seventy feet away from the body. There, additional scuff marks were found, as was blood consistent with the blood types of both the defendant and the victim. The officers also located a .22 caliber revolver lying amidst the other personal items. An autopsy subsequently performed on the body revealed that the victim had endured several small cuts and abrasions, thirty-two stab wounds, and two gunshot wounds inflicted at close range.

The defendant testified that he had given the victim his mother's gun in exchange for $30.00. He stated that on the day of the incident,

he asked the victim to return the gun, because his mother had discovered it missing. The victim agreed, and the two made arrangements to meet at a field near the defendant's house. Later, the victim arrived as planned, but refused to return the gun unless the defendant returned the $30.00. An argument ensued, and when defendant turned to leave, the victim stabbed him in the back. The defendant stumbled, regained his balance, and started running toward the nearest house. The victim then fired two warning shots and threatened to kill the defendant if he did not stop running.

The defendant stopped in the area where the personal items were later found. The victim caught up with the defendant and struck him in the head with the gun. The victim then threw the defendant to the ground, and the two began to fight. When the defendant tried to wrestle the gun away from the victim, it discharged, enabling the defendant to free himself and crawl back to the car. As the defendant was entering the vehicle, the victim grabbed him from behind and pulled him to the ground. Another struggle occurred, and the defendant received a second stab wound to the chest. The defendant pulled the knife from his chest and stabbed the victim repeatedly. The victim eventually released him, and the defendant made his way to the Godwin residence.

The Supreme Court concluded that because the defendant's testimony did not contradict the prosecution's case in any way, "[the] testimony in its entirety [was to] be characterized as a clarification of the State's testimonial and physical evidence." *Id.* at 535, 308 S.E.2d at 263. The Court then reversed the defendant's conviction based on the following reasoning:

> When defendant's explanatory testimony is considered along with the physical evidence presented by the State, the logical inference is that the decedent lost the[] items of personal property during the struggle with defendant. There is simply no substantial evidence of a taking by defendant with the intent to permanently deprive [the victim] of the property. We therefore hold that defendant's motion to dismiss the charge of robbery with the dangerous weapon should have been granted. . . . Because there was insufficient evidence to support the commission of the underlying felony, there is also insufficient evidence to support defendant's conviction of felony murder.

*Id.*

AUSTIN v. CONTINENTAL GEN. TIRE

[141 N.C. App. 397 (2000)]

Applying the reasoning in *Bates* to the case before us, defendant's testimony, which is entirely harmonious with the State's physical and testimonial evidence, clarifies the facts presented. Thus, the logical inference arising from the evidence is that defendant happened upon the scene of a brutal crime, that he became frightened after attempting to render assistance, that he tripped over the murder weapon in his haste to leave, and that he grabbed the weapon and ran out of the store. While the State's evidence, "taken in the strongest view adverse to defendant, . . . 'excite[s] suspicion in the just mind that he is guilty, . . . such view is far from excluding the rational conclusion that some other unknown person may be the guilty party.' " *State v. Lee*, 294 N.C. 299, 303, 240 S.E.2d 449, 451 (1978) (quoting *State v. Goodson*, 107 N.C. 798, 12 S.E. 329 (1890)).

In sum, it is my opinion that the evidence was insufficient to establish that defendant committed the crimes against Mr. Hightower and, thus, the court should have granted his motion to dismiss. Accordingly, I vote to vacate defendant's conviction and remand this matter to the Superior Court for a new trial.