STATE v. SIMON A. GRAGG.

(Decided May 26, 1898.)

*Indictment   for   Murder—Trial—Sufficiency   of   Evidence.*

When, on the trial of one indicted for murder, it appeared that, by the explosion of dynamite under a house, two persons sleeping there were killed; that defendant was overseer of a public road and kept dynamite in his possession for use in making the road; that dynamite was also kept and used by other persons in the neighborhood; that defendant had been employed by the deceased M, who had dismissed him, and that they had quarrelled about it; that defendant had been unfriendly with the deceased B, of whose attentions to a widow, to whom defendant had been engaged, he was jealous; that he had said if the deceased and the widow should marry they should never live together in this country; that he and B had "made up" but defendant had said it was only "from the teeth out;" that there were some tracks made by an 8 or 9 shoe on the hillside a few hundred yards from the place of the homicide which was the size of shoe defendant wore; that the day after the homicide the defendant looked pale and nervous; *Held*, that, as the evidence did not exclude every reasonable supposition that it could have been done by some one other than the prisoner, it did not justify the jury in finding a verdict of guilty.

CLARK and MONTGOMERY, J. J., dissent.

INDICTMENT for murder tried before *Hoke, J.*, and a jury at June, 1897, Special Term of CALDWELL Superior Court. The defendant was convicted of murder in the first degree and appealed. The facts are stated fully in the opinion of FURCHES, J., and in the dissenting opinion of CLARK, J.

*Mr. Zeb V. Walser, Attorney General,* and *Mr. W. C. Newland,* for the State.

*Messrs. R. Z. Linney, W. H. Bower* and *Edmund Jones,* for defendant (appellant).

FURCHES, J.:   The evidence tends to establish a horrible murder.   This was hardly disputed, though there was evidence offered to show that the deceased Moore had been in possession of dynamite, which he had sometimes used.   The evidence tends to show that the deceased Moore and Bowman went to sleep in this world and woke up in eternity; and the question for the jury was one of identity.

There are exceptions to evidence but they cannot be sustained, and the ruling of the court upon defendant's exceptions as to evidence are based upon principles so often sustained by this court that we cannot think it profitable to the defendant or the profession to discuss them in this opinion.

There are exceptions to his Honor's charge, (which seems to us to have been a fair and correct exposition of the law, provided there was sufficient evidence to authorize him in submitting the case to the jury, and to justify them in finding a verdict of guilty.)   The prisoner contended there was not and asked the court to so instruct the jury.   This his Honor declined to do, and this is the real question presented by this appeal.

It is contended for the State that there is some evidence of defendant's guilt, and, this being so, it takes the case to the jury, and that this court cannot correct their verdict; and cites *State* v. *Allen,* 48 N. C., 257, and a number of other cases, which the attorney general contends sustain this contention.   If the first prop-

osition is true that there is sufficient evidence to author-
ize the finding of the jury, then the second proposition
would certainly be true—that this Court cannot review
their finding.

But this is the question in the case that we are called
upon to decide; whether there is sufficient evidence to
go to the jury and to justify their finding.  This ques-
tion is often embarrassing to the courts and probably
gives them as much trouble as any question that comes
before them; and with that disposition that is in all
persons to avoid responsibility, it is but natural that it
should sometimes be left to the jury when it should be
decided by the Judge.  And it is considered best in
questions of very great doubt that it should be left to
the jury.

This makes it necessary that we should review the
testimony to see what evidence there is connecting the
defendant with the *corpus delicti*.  In doing this we do
not expect to quote the testimony (though we have
carefully examined it all) but only to call attention to
those parts bearing most strongly against the prisoner.

There was evidence offered by the State tending to
show that the prisoner lived a mile and a half from the
place of the homicide; that he was a well-to-do man,
was overseer of the public road, and had been and was
at that time in possession of dynamite which he used
in making the road: "there was also evidence that
dynamite was had by other persons in the community,
and used by them for fishing . . . blasting and other
purposes;" that he had at one time been in the employ
of the deceased, who dismissed the prisoner from his
employ, and that the prisoner and the deceased, Moore,
had a quarrel about the matter; that the prisoner and
the deceased, Bowman, had been unfriendly; that pris-

oner had courted a widow Benfield who had discarded him because, as prisoner thought, she preferred Bowman as a suitor to the prisoner; and that prisoner had said, if she and Bowman did marry, they should never live together in this country; that prisoner and deceased had made friends, but prisoner after this said it was "only from the teeth out;" that there were some tracks made by an 8 or 9 shoe on a hillside a few hundred yards from the place of the homicide, and that prisoner wore an 8 or 9 shoe; that prisoner was seen plowing in a field unusually early next morning, in about a half mile of the place where the men were killed; and that prisoner next day looked pale and nervous. The prisoner introduced no evidence.

This is substantially all the evidence in the case, and all as we think that tends to connect the prisoner with the homicide, if this tends to do so. It cannot be denied that this evidence was sufficient to cast suspicion on the prisoner. But does it do more than this? There was no evidence of any confession or declarations amounting to confessions. There was no evidence shown or tending to show that the prisoner was nearer the place of the homicide than his home one and a half miles off. The shoe tracks found on the hill side not far off were no evidence connecting the prisoner with the killing, as there was no peculiarity shown about the tracks or the prisoner's shoes. No. 8 or 9 is the ordinary number that men wear. Threats may be offered to show malice for the purpose of fixing the degree of crime, and may be competent, as some evidence, tending to prove identity. But for this purpose it was very slight evidence, if any. The rule is, not that there is some evidence, a scintilla, but that it must be such as would reasonably justify the verdict. *Wittkowsky* v.

STATE *v.* GRAGG.

*Wasson,* 71 N. C., 451; *Spruill* v. *Ins. Co.,* 120 N. C., 141; *Caldwell* v. *Wilson,* 121 N. C., 423.

The court, among other things charged the jury as follows: "No eye witness has testified that he saw the prisoner do this deed. The State relies on facts and circumstances which it claims establish the guilt of the prisoner. When such evidence is relied on for conviction, every material and necessary circumstance must be established beyond a reasonable doubt, and the entire circumstances so established must be so strong as to exclude every reasonable supposition but that of guilt." This was a "clear cut" charge and a correct statement of the law. But can any reasonable man, unbiased and without prejudice, say that the evidence in this case, taking every thing proved to be true, (and that is the light in which it must be considered by this court,) excludes every reasonable supposition that it could have been done by some one other than the prisoner? Without discussing the matter further, the statement of this proposition of law, correctly given to the jury, we think affords the answer to all intelligent minds, when cooly and deliberately considered, in the negative.

This we say without intending any reflection on the integrity of the jury that tried the case. It was a shocking affair. There was evidence throwing suspicion on the prisoner. He introduced no evidence—did not go on the witness stand and deny the charge. And while the law says he need not do this, and that his not doing so shall not be considered against him, it is impossible to prevent it from having its effect upon the jury. In our opinion it had it in this case.

In our opinion there was not such evidence of the prisoner's guilt as to justify the jury in finding a

verdict of guilty. Another trial may develop other evidence. Error.

New trial.

CLARK, J., dissenting: A jury is the constitutional mode provided for the trial of facts and juries are composed of twelve men, not of thirteen. It is not for the Judge to refuse to let a cause go to the jury unless the evidence is sufficient in his mind (sitting as a juror) to convict. If it were, then the fact that the Judge submits a case to the jury at all becomes the strongest kind of an intimation that in his opinion the jury should convict. *State* v. *Green,* 117 N. C., 695; *State* v. *Kiger,* 115 N. C., 746 ; *State* v. *Christmas,* 101 N. C. 749. If after a verdict of guilty the Judge thinks, notwithstanding the respect which is due to the unanimous opinion of twelve impartial men, that the interests of justice demand a new trial, he is vested with the discretion to grant it. But this is very different from holding as a matter of law that there is no evidence to go to the jury, and a very different matter from this court, out of sight and hearing of the witnesses and surroundings of the trial, holding as a matter of law that there was no evidence to go to the jury, when the jury found that there was sufficient to find the prisoner guilty, and a learned and just Judge has not only held as a proposition of law that there was enough evidence to go to the jury, but had so little doubt about its weight that he refused as a matter of discretion to set the verdict aside. Beides it must be remembered that on the trial below the presumption is in favor of the innocence of the prisoner, which must be overcome, by proof satisfying the jury beyond a reasonable doubt, but on appeal there is no such presumption of fact, but on the contrary there is a presumption of law that the Judge below ruled correctly, and,

unless this is overcome or if the court is in doubt, his judgment must stand. There have been cases where there was no evidence sufficient to submit the case to the jury, but when the judge has held otherwise and the jury has convicted, and the judge has refused even as a matter of discretion to set the verdict aside, it must be a very bald case that should constrain a court of appeals to hold that the jury convicted and the judge sustained the verdict without any evidence. If the evidence is merely such that this court, sitting as jurors, would not have convicted, we are not authorized to interfere. To do so would be to invade the province of the jury and of the Judge below as well, all of whom are presumed competent and impartial in the discharge of the duties confided to them by the Constitution and Laws. We only correct errors of law, we have no authority to correct a finding of fact by a jury. Now, was there an entire absence of evidence in this case, "nothing beyond a mere scintilla?"

It was in evidence: That on June 4, 1896, at a shanty at a saw mill in Caldwell County, Walter Moore and Dallas Bowman were killed by an explosion of dynamite which had been placed under that part of the shanty where stood the bed in which the deceased slept. As a rule, no other persons remained in the mill-yard at night, except these two. The mill was to have been removed the next day. There was evidence that there was no dynamite in the shanty or about it on the day of the explosion and none in the possession or control of the deceased; that the prisoner, Simon Gragg, lived in a house about three-fourths of a mile through the woods from the shanty and a mile and a half from it, going round the public road; the prisoner was overseer of the public road and just prior to the explosion admitted having 32

or 33 joints of dynamite; he had used dynamite fre-
quently and knew how to use it; the sheriff searched
his house soon after the explosion and found only 25
joints of dynamite.   A witness testified that on the
night after the explosion he was at the prisoner's house
and heard his brother Tom ask him whom he had been
letting have dynamite, and the prisoner replied "No
one," and Tom said that the day of the explosion he had
seen 5 or 6 joints out of the box, lying near it, with a
fuse and cap on one of the joints.   The evidence was
that the prisoner kept his dynamite under his bed.
There was evidence that the prisoner and Walter Moore,
one of the deceased, had quarreled a few months before
and were heard to curse each other a short time before
the explosion; that Dallas Bowman, the other deceased,
had come into the neighborhood a few months before ;
that a deep enmity sprung up between the prisoner and
Bowman, and that the prisoner was engaged to be mar-
ried to a widow in the neighborhood, but he became so
jealous of Bowman that she discarded him, and the
prisoner said that if she put him off on account of
Bowman she should never live with him in this country;
that about ten days before the explosion the prisoner
asked Betty Baird about the relations between the
widow and Bowman, and said if "Alice quit him for
Bowman there would be the damndest time this country
ever knew;" that on the Monday just before the killing
he was enquiring where Bowman boarded; that the mill
was on the prisoner's land and he had stipulated when
allowing it to be put there that Bowman should not be
employed there.   Two or three months before the kill-
ing he had waited along the road for Bowman and
enquired if he were coming.   It was also in evidence
that between the prisoner's house and the mill a recent

122—69

track was discovered leading through the woods from the house in the direction of the mill, with occasional impressions, especially distinct on a log about 100 feet long; the track was a shoe No. 8 or 9, the size the prisoner wore. Some witnesses testified that the conduct of the prisoner on the ground the day after the killing was peculiar, and calculated to arouse suspicion; he was pale, preoccupied, and stood apart from others; when the sheriff and witness started through the woods to look for tracks, the prisoner said they need not do that, for the man who did this was smart enough to cover up his tracks, and to another he said that the man who did this came around the road. The morning after the explosion he was plowing in a conspicuous place on the road-side, before sun-up, about a mile from his house, which was a very unusual time for him to be at work. There was evidence that going to the mill soon after being told of the explosion he was so agitated that he had to stop once or twice and said he did not believe he would be able to go there. There was some evidence contradictory of his bearing at the house after the explosion, but in considering whether there is any evidence it is only necessary to consider that against the prisoner. There was no evidence offered for the defence.

If this case could be submitted to this court as a jury upon this evidence, we should be at a great disadvantage, compared to the jury and Judge who tried it, in that we have not had the presence and bearing of the witnesses upon the stand, the knowledge of witnesses and the surroundings which the jury had, nor the same argument of counsel. The reproduction of evidence upon paper is a poor substitute. But it is not for us to say whether upon this evidence, if sitting as jurors,

we would convict.    We have no such power.    Nor is it for us to say whether, sitting as a trial judge, we would not have granted a new trial as a matter of discretion. That power and duty are confided to him and not reviewable.    The sole power confided to us is to declare as a proposition of law that the presumption of the correctness of the ruling below is overcome and that there was plainly no evidence to be submitted to a jury. There was motive, strong motive, and bitter threats shown, the killing by dynamite, the fact that the prisoner had dynamite and seven pieces in his possession disappeared just at the time of the killing, and he made no effort to account for it, the recently made track leading from his house through the woods to the place of the homicide, a shorter way than around the road, and that the track was the size of the prisoner's, and the remarks of the prisoner to discourage hunting for the tracks and his agitation.    No one was sufficient, but taken together the whole was enough evidence to be submitted to the jury.

That these circumstances could not be declared on appeal no evidence, would seem plain.    Whether they were sufficient evidence was for the jury.    There are many cases in which this court has refused to hold less evidence than this to be no evidence.    *State* v. *Green*, 117 N. C., 695 ; *Young* v. *Alford*, 118 N. C., 215 ; *State* v. *Kiger*, 115 N. C., 746; *State* v. *Chancy*, 110 N. C., 507; *State* v. *Christmas*, 101 N. C., 749; *State* v. *Powell*, 94 N. C., 965; *State* v. *Atkinson*, 93 N. C., 519; *State* v. *White*, 89 N. C., 462; *Brown* v. *Kinsey*, 81 N. C., 245; *State* v. *Waller*, 80 N. C., 401; *State* v. *Patterson*, 78 N. C., 470; *State* v. *Allen*, 48 N. C., 257; *Sutton* v. *Madre*, 47 N. C., 320; *Cobb* v. *Fogalman*, 23 N. C., 440 and many others.

The institution of the jury has been preserved from encroachment at this term by many decisions upon the application of Chapter 109 of the Acts of 1897.   This is an  encroachment  upon  its  prerogative  upon  the criminal side, but not less to be deplored upon  that account.

MONTGOMERY, J.:   I concur in the dissenting opinion.