STATE OF NORTH CAROLINA v. MELVIN BELL

No. 835SC195

(Filed 6 December 1983)

**Homicide § 21.7— second degree murder—insufficiency of evidence**

The evidence was insufficient to support conviction of defendant for second degree murder where it tended to show that at 4:45 p.m. on 12 June a man wearing a flowered shirt was seen crawling from the window of a home; police found a bloodstained rubber glove on the porch of the home; an analysis of bloodstains on the glove indicated they were consistent with the victim's blood; about 25 minutes later, an officer was dispatched to another address to investigate a possible break-in; the officer saw defendant, wearing a flowered shirt, jump from a fence and begin walking away; defendant was arrested and a 10-inch knife was found about five feet from the spot where defendant jumped from the fence; the owner of the premises indicated that the knife was not hers; keys which fit the victim's apartment and post office box were found in defendant's pocket; the victim's body was discovered in his apartment at 1:00 p.m. on 13 June; there was a pool of blood around the victim's head; police found in the apartment a sheath which fit the knife found near where defendant was arrested; blood on a pipe and handkerchief found in the apartment was consistent with the victim's blood type, and blood on a hatchet, pillowcase and sheet found therein was consistent with defendant's blood type; and the victim died from a blow to the head with a wine bottle.

Chief Judge VAUGHN dissenting.

APPEAL by defendant from *Tillery, Judge.* Judgment entered 4 December 1981 in NEW HANOVER County Superior Court. Heard in the Court of Appeals 24 October 1983.

Defendant Melvin Bell was charged with the second-degree murder of Willie Hamilton, whose body was found in his Wilmington apartment at 1:00 p.m. on 13 June 1981.

Evidence for the state tended to show the following facts and events. At about 4:45 p.m. on 12 June 1981, Alice Newton saw a man trying to crawl from a window of a home at 514 Princess Street, where Ms. Newton worked as a nurse's aide. Ms. Newton called police, who found a bloodstained blue rubber glove on the porch of the home, but discovered no intruder. An analysis of the bloodstains on the glove indicated they were consistent with Hamilton's blood. Ms. Newton told police the intruder was a balding man wearing a flowered shirt.

About twenty-five minutes later, at 5:09 p.m., Officer Fredlaw of the Wilmington Police Department was dispatched to 614 Ninth Street to investigate a possible break-in at that address. When Officer Fredlaw arrived he went to the backyard, where he saw defendant, wearing a flowered shirt, jump from a fence, and begin walking away. Defendant was arrested and a short time later a ten-inch dagger was found about five feet from the spot where defendant jumped off the fence. The owner of the premises indicated the knife was not hers and that she had never seen it before.

A search of defendant was conducted at the Wilmington Police Station and revealed bloodstains on defendant's clothing and keys in defendant's pockets which fit Hamilton's apartment and post office box. The bloodstains proved consistent with defendant's blood and inconsistent with Hamilton's blood type.

At 1:00 p.m. on 13 June 1981, Wilmington police entered Hamilton's apartment at 114 North Sixth Street, and found him dead on the floor. There was a pool of blood around Hamilton's head, the body was partially disrobed, and had been castrated. A number of items seized at the apartment were placed into evidence, including a sheath which fit the knife found near where defendant was arrested, and a bloody hatchet, pipe, pillowcase, sheet and handkerchief. The blood on the pipe and handkerchief were consistent with Hamilton's blood type, and the bloodstains on the hatchet, pillowcase and sheet were consistent with defendant's blood type. The time Hamilton died was unclear, but could have occurred as early as 3:30 p.m. on 12 June 1981, or as late as 1:00 p.m. on 13 June 1981. Hamilton probably died of a blow to the head with a wine bottle whose shattered fragments were found in Hamilton's scalp and near his body.

Evidence for defendant tended to show that Ms. Newton was unable to identify defendant as the man she saw emerge from the window at 514 Princess Street, and furthermore that it would be difficult for a man to travel from 514 Princess Street to 614 Ninth Street, in the time between the two break-ins. A neighbor testified that she heard sounds from Hamilton's apartment as late as 5:30 p.m. on 12 June 1981, and that Hamilton may thus have been alive at the time defendant was arrested. The wounds to the victim's head were relatively superficial and would not ordinarily

have been serious enough to cause death and it was possible that the victim, who was a seventy year old alcoholic, may have died from alcohol poisoning. No fingerprints were found at the scene of the crime other than the victim's own, and there were no visible cuts or scratches on defendant at the time of his arrest.

Defendant was convicted of second-degree murder following a jury trial, and sentenced to twenty-five years in prison. From entry of judgment upon the verdict, defendant appeals.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General James C. Gulick and Special Deputy Attorney General John R. B. Matthis, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender James H. Gold, for defendant.*

WELLS, Judge.

In his first assignment of error, defendant contends that the trial court erred in failing to grant his motion to dismiss the murder charge. We agree.

"Upon the defendant's motion for judgment of nonsuit in a criminal action, the question for the court is whether there is substantial evidence of each essential element of the offense charged, or of a lesser offense included therein, and of the defendant's being the perpetrator of such offense. . . . In making this determination, the evidence must be considered in the light most favorable to the State and the State is entitled to the benefit of every reasonable inference to be drawn from it. . . .

"The test of the sufficiency of the evidence to withstand the motion for judgment of nonsuit is the same whether the evidence is circumstantial, direct or both. . . . There is substantial evidence of each element of the offense charged, . . . and of the identity of the defendant as the perpetrator of it if, but only if, interpreting the evidence in accordance with the foregoing rule, the jury could draw a reasonable inference of each such fact from the evidence. . . . If, on the other hand, the evidence so considered, together with all reasonable inferences to be drawn therefrom, raises no more than a suspicion or a conjecture, either that the offense charged in the indictment, or a lesser offense included

therein, has been committed or that the defendant committed it, the evidence is not sufficient and the motion for judgment of nonsuit should be allowed." [Citations omitted.] *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971), *cert. denied,* 414 U.S. 874, 94 S.Ct. 157, 38 L.Ed. 2d 114 (1973); *see also State v. Powell,* 299 N.C. 95, 261 S.E. 2d 114 (1980); *State v. Smith,* 40 N.C. App. 72, 252 S.E. 2d 535 (1979).

The rule, thus stated, proves more difficult in application than in formulation. Nearly a century ago, our courts recognized that the question ". . . whether there is sufficient evidence to go to the jury . . . is often [an] embarrassing one to the courts and probably gives them as much trouble as any question that comes before them . . . ." *State v. Gragg,* 122 N.C. 1082, 30 S.E. 306 (1898). Twentieth century courts have made little progress toward resolving the problem and cases decided since *Gragg* lack consistent analyses and results. The difficulty of applying the standard consistently to the varying facts of each case increases where evidence of the defendant's guilt is purely circumstantial. This is so because determining the significance of circumstantial evidence requires the trier of fact to infer the presence of a disputed fact from an offered fact, a logical step not required in evaluating direct evidence.

Perhaps it is this additional step which explains the confusion in decisions concerning sufficiency of the evidence. The lack of consistency in the case law begs for the construction of some test or guideline around which both defense and prosecution attorneys could build their cases. Our analysis of the cases and the problem before us, however, convinces us that such a standard, while desirable, would not be sufficiently flexible and is certainly not supported by precedent.

The first area of confusion in decided cases concerns the quantum of proof that the state must present in order to survive a defendant's motion to dismiss. Earlier cases required that the state must present evidence inconsistent with any hypothesis other than guilt. *State v. Harvey,* 228 N.C. 62, 44 S.E. 2d 472 (1947). This language was overruled, at least formally, in *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431 (1956). In that case the court held that the state need only present substantial evidence of all material elements of the offense to overcome a motion to

dismiss. "To hold that the court must grant a motion to dismiss unless, in the opinion of the court, the evidence excludes every reasonable hypothesis of innocence would in effect constitute the presiding judge the trier of facts." *Id.* While the rule appears sound and well-reasoned, it is unclear whether introduction of the new standard has made a significant difference in the outcome of cases. *See, e.g., State v. Lee,* 294 N.C. 299, 240 S.E. 2d 449 (1978), in which the court noted that the facts presented by the state "excited suspicion in the just mind that he is guilty, but such view is far from excluding the rational conclusion that some other unknown person may be the guilty party . . ." *citing State v. Goodson,* 107 N.C. 798, 12 S.E. 329 (1890).

In addition to the inconsistent language concerning the level of proof required of each material element of the crime, the cases fail to specify how much evidence the state must produce that the defendant is the perpetrator of the crime. The modern "test" states only that there must be substantial proof of each element of the crime and that the defendant committed the act. There appears to be no logical reason to require less than "substantial" proof that defendant is the perpetrator, however, despite the lack of authority on the subject.

The difficulty in labelling the required level of proof that defendant committed the crime touches only the surface of the problem presented upon a motion to dismiss. The real problem lies in applying the test to the individual facts of a case, particularly where the proof is circumstantial. One method courts use to assist analysis is to classify evidence of guilt into several rather broad categories. Although the language is by no means consistent, courts often speak in terms of proof of motive, opportunity, capability and identity, all of which are merely different ways to show that a particular person committed a particular crime. In most cases these factors are not essential elements of the crime, but instead are circumstances which are relevant to identify an accused as the perpetrator of a crime. *See, e.g., State v. Palmer,* 230 N.C. 205, 52 S.E. 2d 908 (1950); *State v. O'Neal,* 187 N.C. 22, 120 S.E. 817 (1924); Brandis, North Carolina Evidence § 83 (2d rev. ed. 1982). While the cases do not generally indicate what weight is to be given evidence of these various factors, a few rough rules do appear. It is clear, for instance, that evidence of *either* motive or opportunity alone is insufficient to carry a

case to the jury. *State v. White*, 293 N.C. 91, 235 S.E. 2d 55 (1977) (the victim lived in a mobile home adjacent to the motel where defendant lived; defendant, a black man, frequently visited the victim; a black man was seen running away from the mobile home on the evening of the killing; there was blood on the carpet of defendant's motel room, and a knife similar to the murder weapon was found in defendant's room); *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967) (defendant was seen driving to the victim's house twice on the day of the killing and that his truck was parked in the victim's yard; defendant, who had been drinking heavily, returned home on the day of the killing with a deep head wound; and a search of defendant's room revealed a bloody pocket knife with chest hairs similar to the victim's stuck on the blade); *see also State v. Hendrick*, 232 N.C. 447, 61 S.E. 2d 349 (1950); 4 N.C. Index 3d, *Criminal Law* § 106.2.

When the question is whether evidence of *both* motive and opportunity will be sufficient to survive a motion to dismiss, the answer is much less clear. The answer appears to rest more upon the strength of the evidence of motive and opportunity, as well as other available evidence, rather than an easily quantifiable "bright line" test. For instance, in *State v. Furr*, 292 N.C. 711, 235 S.E. 2d 193, *cert. denied*, 434 U.S. 924, 98 S.Ct. 402, 54 L.Ed. 2d 281 (1977), defendant threatened ex-wife repeatedly, tried to hire others to kill her, possessed a garage door opener to her home and lived within five minutes of her home. Our Supreme Court held that this evidence was sufficient only to raise a suspicion or conjecture as to defendant's guilt and that defendant's motion to dismiss should have been allowed. Likewise, the evidence was deemed insufficient in the following cases: *State v. Lee, supra* (defendant had beaten and threatened the victim, who was his former lover, was aware she had had an affair with a neighbor, owned a gun and lived in the same mobile home with her, a few miles from the spot where the victim was found shot to death); *State v. Gragg, supra* (defendant bore grudges against both victims, had threatened them, possessed dynamite of the kind used in the murder and was seen within half a mile of the victims' home on the day of the killing).

It seems impossible therefore, to glean from the existing cases any clear, bright-line test by which it can be accurately and consistently determined when the state has presented sufficient

substantial circumstantial evidence of identity of the perpetrator to survive a defendant's motion to dismiss. Nor does the nature of the problem lend itself to construction of such a test. In many ways the problem of determining when "substantial" evidence of identity has been presented is similar to the problem of determining whether evidence is relevant and therefore admissible. To be relevant, evidence must tend however slightly, to prove existence of a disputed fact. To analogize, the state's evidence must tend substantially to prove the disputed fact that defendant is the perpetrator. The levels of proof required to establish relevancy and substantial evidence of identity are of course different, but in both cases inferences from an established fact must be drawn to establish a disputed fact, based on established rules of physics or common experience. *Brandis, supra,* § 81. *Brandis* has warned against attempting to erect bright-line tests for determining relevancy of evidence.

> Indeed, the variety of possible fact situations is so nearly infinite that, as the Court has recognized, no precise rule of general application can be formulated. . . . in the absence of a clearly applicable and authoritative precedent, problems of relevancy can be resolved only by logic and experience, hopefully leavened with a modicum of common sense. Since the first of these three elements is subject to refined disputation and the other two vary rather widely as between judges, the combination does not guarantee unanimity or even consensus in specific situations. But no better approach is available or is likely to become available through ingeniously contrived, judicially enunciated "test" or definitions; nor is the omnipotent computer likely to be of aid.

*Id.* § 78, 290 n. 22.

Recognizing that existing case law and the necessity to retain flexibility are aligned against temptation to construct a bright-line test, we are left with the standard of reviewing motions to dismiss in cases such as the one now before us "in the light of all the circumstances," which at least has the blessings of precedent, although it lacks predictability. We turn, therefore, to an analysis of the state's evidence in the case before us, to determine if the state presented substantial evidence that defendant committed the crime. We conclude the state did not meet its bur-

State v. Bell

den and that the motion to dismiss should have been allowed. The only substantial evidence linking defendant to the crime consisted of the victim's keys which were found in defendant's pockets.

While the state argues otherwise, we conclude that the evidence of the results of tests of blood taken from the victim's apartment and from the rubber glove are of such small positive probative value that it did not serve to identify defendant as the perpetrator. It is well established that blood tests are "highly probative negatively" but have "minimal" positive probative value. That is, while the tests may accurately determine that a person could not have been the source of a certain blood type, the tests cannot accurately establish that a particular, single individual was the source of the blood. *State v. Fulton*, 299 N.C. 491, 263 S.E. 2d 608 (1980); Annot., 2 A.L.R. 4th 500 (1980 & 1983 Supp.). The evidence linking defendant to the Princess Street break-in and the glove found on the porch of the home there was so nebulous as to lack probative value. Ms. Newton was unable to identify defendant as the man she saw climb out of the Princess Street home; nor did she know how the glove was deposited on the porch. Further, there was no evidence that when arrested, defendant had any wounds from which he could have left blood at the scene of the crime.

The fact that the knife found near the spot where defendant was arrested fit the sheath found in the victim's apartment is of little probative value. First, the inference must be drawn that the knife belonged to defendant only because it was found near where defendant was apprehended. Second, the inference must be drawn that the knife found near defendant belonged to the sheath found in Hamilton's apartment. Such evidence is far too tenuous to be considered as substantial proof of anything.

Evidence that the victim's keys were found in defendant's pocket tends to show that defendant had access to the victim's apartment and therefore had the opportunity to murder him, but does not constitute substantial evidence of motive.

In sum, the evidence taken in the light most favorable to the state at the most shows only defendant had an opportunity to kill the victim. As discussed above, evidence of opportunity alone is insufficient to survive a defendant's motion to dismiss. A careful review of all the circumstances shown by the state's evidence in

this case leads us to the conclusion that the state raised no more than a suspicion that defendant murdered Hamilton, and that, therefore, defendant's motion to dismiss should have been allowed.

Defendant has raised numerous other exceptions and assignments of error which we need not address in light of our holding that defendant's conviction may not stand. For the reasons stated, the judgment below must be and is

Reversed and vacated.

Judge JOHNSON concurs.

Chief Judge VAUGHN dissents.

Chief Judge VAUGHN dissenting.

The majority opinion is well written and persuasive. I must, however, respectfully dissent. I feel, as did the able and experienced judge who tried the case, that the State presented an array of circumstances pointing to defendant's guilt sufficient to take the case to the jury. The twelve found those circumstances so convincing that they had no reasonable doubt as to his guilt. I would not disturb the verdict.