IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-246

Filed 19 December 2023

New Hanover County, No. 20CRS50689

STATE OF NORTH CAROLINA

v.

CEDRIC ALDEN BURNETT

Appeal by defendant from judgment entered 1 April 2023 by Judge Thomas R. Wilson in New Hanover County Superior Court. Heard in the Court of Appeals 28 November 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Robert C. Montgomery, for the State.*

*Widenhouse Law, by M. Gordon Widenhouse, Jr., for the defendant-appellant.*

TYSON, Judge.

Cedric Alden Burnett ("Defendant") appeals from judgment entered upon a jury's verdict finding him guilty of first-degree murder. Our review reveals no error.

## I.   Background

Fourteen-year-old Aljean Williams ("Williams") was murdered while visiting his grandmother in Wilmington on 3 January 2016. Williams was shot twice while standing on Emory Street and died at the hospital a short time later.

New Hanover County Sheriff's Sergeant Daniel Roehrig ("Sgt. Roehrig") responded to the report of a shooting on Emory Street near the intersection with Stewart Circle. Law enforcement officers were concerned about retaliation occurring in that area following another murder two weeks prior. When Sgt. Roehrig arrived, he saw Williams lying on the ground with several other people standing over him. Sgt. Roehrig did not notice any wounds on Williams and began CPR. Sgt. Roehrig did not find any weapons on the scene.

Officers found several spent casings at the scene: one 9-millimeter Luger and six .40 caliber Winchester. Lieutenant Joshua Bryant and Sheriff's Deputy Bryan Thigpen also responded to the shooting. Upon arrival on the scene, they were asked to follow the ambulance carrying Williams to the hospital. While enroute to the hospital, they were diverted by a dispatch of shots being fired at 11th Street at Castle Street.

Upon arrival, the officers saw Defendant running from the area. The officers activated their blue lights. Defendant looked back, saw the officers, and began to quickly run away from the area. The officers exited their vehicle and chased after Defendant until he was stopped and seized by the officers.

Defendant was reluctant to give his name to the officers. Defendant told the officers: "It don't matter because once you find out who I am I am not getting out of jail." Officers found a Kel-Tec P-11 9mm semi-automatic handgun on Defendant.

Defendant was arrested for carrying a concealed weapon and resisting arrest. Once Defendant revealed his name following his arrest, the officers discovered Defendant was a convicted felon in possession of a firearm and there was an outstanding warrant for his arrest for cutting an electronic monitoring device on 20 December 2015.

The officers determined the Kel-Tec handgun contained four rounds of 9-millimeter full-metal-jacket rounds. A gunshot residue test ("GSR") performed on Defendant showed the presence of gunshot residue.

Williams' autopsy revealed two gunshot wounds, both bullets entering his back and rear. One bullet had entered the left buttock, traveled straight up, hitting the stomach and liver, before passing through the diaphragm and coming to rest in his heart. The other bullet entered Williams' upper left back, and traveled behind the heart, through the lungs, and through the spine.

The State Crime Laboratory determined the 9mm casing from the scene and the bullet removed from Williams' heart, was fired from the Kel-Tec P-11 9mm found on Defendant when he was arrested. Defendant pleaded guilty to possession of a firearm by a felon and interfering with an electronic monitoring device on 25 July 2016. Defendant was indicted for first-degree murder on 29 May 2020. Defendant was convicted of first-degree murder and was sentenced to life without parole. Defendant appealed.

Defendant filed a motion for appropriate relief ("MAR"). The superior court conducted an evidentiary hearing and denied the MAR on 30 December 2022. Defendant filed a written notice of appeal on 4 January 2023.

## II. Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2021).

## III. Issues

Defendant argues the trial court erred by: (1) denying his motion to dismiss the first-degree murder charge; (2) overruling objections to expert testimony; (3) denying his post-conviction MAR; (4) admitting evidence of his prior removal of an electronic monitoring device; and, (5) overruling his objections to the State's closing argument.

## IV. Motion to Dismiss

### A. Standard of Review

This Court's standard of review of a denial of a motion to dismiss is well established: "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (citation omitted), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000).

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995). "Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455. Even if circumstantial evidence does not rule out "every hypothesis of innocence," the motion to dismiss may be overcome and denied. *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988) (citation omitted).

"The denial of a motion to dismiss for insufficient evidence is a question of law which this Court reviews *de novo*." *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (citation omitted).

## B. Analysis

Defendant argues the trial court erred by denying his motion to dismiss the first-degree murder charge based on premeditation and deliberation. He asserts insufficient evidence tending to show he was the perpetrator was introduced.

To support a conviction for first-degree murder, "the State must prove: (1) an unlawful killing; (2) with malice; (3) with the specific intent to kill formed after some measure of premeditation and deliberation." *State v. Peterson*, 361 N.C. 587, 595, 652 S.E.2d 216, 223 (2007) (citations omitted).

Premeditation means "the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." *State v. Bullock*, 326 N.C. 253, 257, 388 S.E.2d 81, 83 (1990) (citation omitted). "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *State v. Davis*, 349 N.C. 1, 33, 506 S.E.2d 455, 472 (1998) (citation omitted). Premeditation and deliberation do not require a "fixed length of time." *State v. Walters*, 275 N.C. 615, 623, 170 S.E.2d 484, 490 (1969) (citation omitted).

Our Supreme Court has long held:

> Premeditation and deliberation are processes of the mind. In most cases, they are not subject to proof by direct evidence but must be proved, if at all, by circumstantial evidence. Among other circumstances from which premeditation and deliberation may be inferred are (1) lack of provocation on the part of the deceased, (2) the conduct and statements of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill-will or previous difficulty between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds.

*State v. Vause*, 328 N.C. 231, 238, 400 S.E.2d 57, 62 (1991) (citation omitted).

When evidence of whether the defendant was the perpetrator of the crime is circumstantial: "courts often [look towards] proof of motive, opportunity, capability, and identity to determine whether a reasonable inference of [the] defendant's guilt may be inferred or whether there is merely a suspicion that the defendant is the perpetrator." *State v. Hayden*, 212 N.C. App. 482, 485, 711 S.E.2d 492, 494 (2011) (citation and quotation marks omitted). "The evidence need only give rise to a reasonable inference of guilt in order for it to be properly submitted to the jury." *Stone*, 323 N.C. at 452, 373 S.E.2d at 433.

To survive a motion to dismiss, evidence of motive alone is insufficient and evidence of a defendant's opportunity and means to commit the crime must also be considered. *State v. Bell*, 65 N.C. App. 234, 241, 309 S.E.2d 464, 469 (1983), *aff'd per curiam*, 311 N.C. 299, 316 S.E.2d 72 (1984).

This Court has also held:

> The real problem lies in applying the test to the individual facts of a case, particularly where the proof is circumstantial. One method courts use to assist analysis is to classify evidence of guilt into several rather broad categories. Although the language is by no means consistent, courts often speak in terms of proof of motive, opportunity, capability and identity, all of which are merely different ways to show that a particular person committed a particular crime. In most cases these factors are not essential elements of the crime, but instead are circumstances which are relevant to identify an accused as the perpetrator of a crime. . . .
>
> While the cases do not generally indicate what weight is to be given evidence of these various factors, a few rough rules

> do appear. It is clear, for instance, that evidence of either motive or opportunity alone is insufficient to carry a case to the jury. On the other hand, when the question is whether evidence of both motive and opportunity will be sufficient to survive a motion to dismiss, the answer is much less clear. The answer appears to rest upon the strength of the evidence of motive and opportunity, as well as other available evidence, rather than an easily quantifiable "bright line" test.

*State v. Lowry*, 198 N.C. App. 457, 466, 679 S.E.2d 865, 870-71 (2009) (internal citations and quotation marks omitted).

The State presented evidence tending to show motive, opportunity, and means. Testimony was presented tending to show the shooting was in retaliation for a fatal shooting two weeks prior, even though the trial court had granted Defendant's motion to prohibit any references to "gangs" or "gang shooting." The State also presented testimony that thirty minutes before Williams was shot, a report was received of someone seeing a car park at the corner where Williams was shot and someone in the backseat pointed out of the window.

The State also presented evidence tending to show Defendant's opportunity and means to commit the crime. Physical evidence of the 9mm shell casing at the murder scene, the bullet recovered from Williams body, weapon on Defendant's person upon arrest, and Defendant's statements to police after he was arrested tended to tie him to Williams' murder. A reasonable juror could find Defendant had the opportunity and means to commit the murder. The trial court did not err in denying Defendant's motion to dismiss the first-degree murder charge based on

premeditation and deliberation.  Defendant's argument is overruled.

## V.    Expert Witness

## A. Standard of Review

"Trial courts enjoy wide latitude and discretion when making a determination about the admissibility of expert testimony."  *State v. King*, 366 N.C. 68, 75, 733 S.E.2d 535, 539-40 (2012) (citation omitted).  A trial court's ruling on Rule 702(a) is reviewed for abuse of discretion.  *State v. McGrady*, 368 N.C. 880, 893, 787 S.E.2d 1, 11 (2016).  "A trial court may be reversed for abuse of discretion only upon showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision."  *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986) (citations omitted).

## B. Analysis

Defendant argues the trial court erred in allowing the State's expert witness to testify without making necessary findings on reliability.

North Carolina Rules of Evidence governs testimony by an expert witness at trial:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
>
> (1) The testimony is based upon sufficient facts or data
>
> (2) The testimony is the product of reliable principles

and methods

 (3) The witness has applied the principles and methods reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2021).

 Defendant contends the State's expert witness testimony was not "the product of reliable principles and methods" in violation of Rule 702(a)(2). *Id.*

 The superior court made the following findings of fact in its order on allowing the expert testimony:

> 14. In error, [the State's expert] entered that the firearm, noted as K1, was "polygonal" as opposed to "conventional." This error was not caught by the peer review process[;] however[,] it did not affect the outcome or integrity of her examination.
>
> 15. Otherwise, [the State's expert]'s methods and conclusions as to this examination are not rebutted and her microanalysis and conclusions were subject to peer review.
>
> 16. Moreover, despite and with exception to her acknowledged error, [the State's expert] testified as to each and every step taken in this examination, and each and every step drew on her training and experience which included her competency and near annual proficiency exams.
>
> 17. During the Casing Examination, [the State's expert] fired the K-1 (the firearm) three times and analyzed the casing and additionally maintained the three known projectiles. [the State's Expert] selected the ammunition to be used for these test fires.
>
> 18. Regarding, the Projectile Examination (approximately two years later) which was requested as a rush exam, [the State's expert] testified this examination was cross referenced from the Casing Examination.

19. [The State's expert] testified to each and every step taken during the Projectile Examination, and that each and every step drew on her training and experience.

20. Regarding [the State's expert's] methodoly [sic] in this regard, she was challenged in the rebuttal testimony by [the Defendant's expert] as asserted failure in following certain standard operating procedures.

21. There exists a tension between the testimony of [the State's expert] and her examination of the projectile and that of [the Defendant's expert] as set forth in her testimony and report (Defendants voir dire exhibit 25) as to the Projectile Examination. This tension is founded in a disparity in their respective interpretation and application of standard operating procedures in effect at the time of [the expert]'s examination.

22. [The expert] elected not to examine/measure the lands and grooves of the fired projectile where the submitted projectile and the maintained control projectiles initially collected as part of the Casing Examination (the three test fires) were—in accordance to the standard operating procedure she applied and pursuant to her training and experience—sufficiently similar to move to microanalysis.

23. Based on this decision and her analysis, she determined the projectile taken from the victim's heart as compared to the three projectiles maintained from the Casing Examination were sufficiently similar under micro-analysis for her to form an opinion.

24. [The State's expert's] opinion from her Projectile Examination was based on sufficient facts and data as taken from the three projectiles maintained from the Casing Examination and fired from the firearm in question; she clearly explained her methodology under the operating procedures in place at the time and her decision not to measure the lands and grooves of the projectile taken from the victim's heart based on her analysis of the comparative test projectiles being taken from the known source firearm and known source ammunition; and she

applied her methods reliably and peer review of her micro-
analysis confirmed her opinion.

The trial court found the State's expert witness' decision to conduct the micro-analysis test, instead of measuring the lands and grooves because it was more definitive, was a "rational discretionary decision" based on the State Crime Lab's "guidelines and protocols." The superior court made supported findings to resolve purported contradictions between the competing experts. The trial court did not abuse its discretion in admitting the State's expert's testimony and the superior court did not err in denying Defendant's MAR on this ground.

## VI.    Newly Discovered Evidence

### A. Standard of Review

This Court reviews a trial court's ruling on a defendant's MAR for "whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court." *State v. Stevens*, 305 N.C. 712, 720, 291 S.E.2d 585, 591 (1982). "When a trial court's findings on a motion for appropriate relief are reviewed, these findings are binding if they are supported by competent evidence and may be disturbed only upon a showing of manifest abuse of discretion. However, the trial court's conclusions of law are fully reviewable on appeal." *State v. Lane*, 271 N.C. App. 307, 311, 844 S.E.2d 32, 37 (2020) (citation omitted).

### B. Analysis

The Supreme Court of the United States held in *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963), that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 10 L. Ed. 2d at 218.

"Evidence favorable to an accused can be either impeachment evidence or exculpatory evidence." *State v. Williams*, 362 N.C. 628, 636, 669 S.E.2d 290, 296 (2008) (citing *United States v. Bagley*, 473 U.S. 667, 676, 87 L. Ed. 2d 481, 490 (1985)). Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682, 87 L. Ed. 2d at 494.

The trial court found the State was not in possession of the expert's personnel records from the State Crime Lab prior to trial and was not aware of a purported mistake she had made in another case prior to trial. "The State is not required to conduct an independent investigation to determine possible deficiencies suggested by defendant in State's evidence." *State v. Smith*, 337 N.C. 658, 664, 447 S.E.2d 376, 379 (1994). The Record does not indicate the State had suppressed material evidence. The superior court did not err in denying Defendant's MAR on this ground.

Defendant further argues the superior court erred in denying him a new trial based upon newly discovered evidence. Our Supreme Court has held the perquisites for a new trial on the grounds of newly discovered evidence are:

1. That the witness or witnesses will give the newly discovered evidence.

2. That such newly discovered evidence is probably true

3. That it is competent, material and relevant.

4. That due diligence was used and proper means were employed to procure the testimony at trial.

5. That the newly discovered evidence is not merely cumulative.

6. That it does not tend only to contradict a former witness or to impeach or discredit him.

7. That it is of such a nature as to show that on another trial a different result will probably be reached and that the right will prevail.

*State v. Cronin*, 299 N.C. 229, 243-44, 262 S.E.2d 277, 286 (1980) (citations omitted).

Reviewing Defendant's argument in light of these factors, both pieces of purported "new evidence" proffered by Defendant concerning the State's expert: (1) a complaint by a superior court judge resulting in an investigation and (2) a prior mistake made during a firearm examination, are the sort of evidence that merely questions the expert witness' past, not the State's evidence at this trial, and does not necessitate a new trial. *Id.* The trial court did not err in denying Defendant's MAR on this ground.

## VII.  Rule 404(b)

Defendant argues the trial court erred in admitting evidence of his removing an electronic monitoring device fifteen days earlier.

### A.  Standard of Review

Our Supreme Court has held:

> When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling . . . we look to whether the evidence supports the findings and whether the findings support the conclusions.  We review de novo the legal conclusions that the evidence is, or is not, within the coverage of Rule 404(b).

*State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).

### B.  Analysis

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such a proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2021).

The Supreme Court of North Carolina has repeatedly interpreted Rule 404(b) to be a rule of inclusion, and not exclusion. *Beckelheimer*, 366 N.C. at 131, 726 S.E.2d at 159.  This inclusion of Rule 404(b) testimony or evidence is constrained by the requirements of similarity and temporal proximity of the evidence of the acts. *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002).

Rule 404(b) is "subject to but *one exception* requiring the exclusion of evidence if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Lyons*, 340 N.C. 646, 668, 459 S.E.2d 770, 782 (1995) (citation omitted).

The trial court admitted information over Defendant's objection of Defendant's removing his electronic monitoring device fifteen days prior to the shooting. The State argues the evidence of Defendant's actions is properly admitted under Rule 404(b) to show "the natural development of the facts or is necessary to complete the story of the charged crime for the jury." *State v. White*, 340 N.C. 264, 284, 457 S.E.2d 841, 853 (1995).

Our Supreme Court has held:

> Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or [if it] forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

*State v. Agee*, 326 N.C. 542, 548, 391 S.E.2d 171, 174 (1990) (citation and internal quotation marks omitted).

Defendant disabled his electronic monitoring device approximately an hour after another murder was committed two weeks earlier in the same area of Wilmington. At the time of Williams' murder, law enforcement officers were monitoring that area for retaliation. The evidence and timing of these incidents and

Defendant's actions are part of the chain of events that contextualize the crime. The trial court did not err in admitting this evidence. Defendant's argument is overruled.

## VIII. State's Closing Argument

### A. Standard of Review

"The standard of review for improper closing arguments that provoke timely objection from opposing counsel is whether the trial court abused its discretion by failing to sustain the objection." *State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002) (citations omitted).

### B. Analysis

Defendant argues the State's closing argument was grossly improper. Defendant argues the State improperly shifted the burden of proof onto him and improperly asserted the murder was in retaliation for another murder, after agreeing not to argue Williams' murder was a gang killing.

The State's closing statement referred to Defendant's failure to refute the State's evidence concerning the physical evidence. The prosecutor's remarks concerning the two murders possibly being linked by retaliation were supported by competent evidence and testimony properly admitted at trial. The State's statement did not shift the burden of proof from the State onto Defendant. Defendant's argument is overruled.

## IX. Conclusion

When viewed in the light most favorable to the State, including the reasonable

inferences thereon, the State presented sufficient evidence for the first-degree murder charge based upon premeditation and deliberation to be submitted to the jury. The trial court properly denied Defendant's motion to dismiss the charges submitted to the jury.

The trial court made sufficient findings to allow the admission of the State's ballistics expert witness testimony under Rule 702(a). N.C. Gen. Stat. § 8C-1, Rule 702(a). Defendant has failed to show any error in the denial of his post-conviction MAR on his alleged new evidence.

The trial court properly admitted evidence of Defendant disabling an electronic monitoring device two weeks prior to Williams' murder as meeting temporal proximity and other circumstances required under Rule 404(b). N.C. Gen. Stat. § 8C-1, Rule 404(b). The State's closing argument did not mention "gangs" and was not improper.

Defendant received a fair trial, free from prejudicial errors he preserved and argued. We find no error in the jury's verdict or in the judgment entered thereon. *It is so ordered.*

NO ERROR.

Judges ZACHARY and FLOOD concur.