An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1118

Filed 3 December 2025

Gaston County, Nos. 20CR060040-350, 22CR001652-350

STATE OF NORTH CAROLINA

v.

DARIUS TRAVON JONES

Appeal by defendant from judgment entered 17 May 2024 by Judge David Phillips in Gaston County Superior Court. Heard in the Court of Appeals 18 November 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Eric R. Hunt, for the State.*

> *Stephen G. Driggers for defendant.*

ARROWOOD, Judge.

Darius Travon Jones ("defendant") appeals from judgment after jury trial, where he was convicted of attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. The trial court arrested judgment as to the latter conviction and sentenced him to a term of imprisonment of 180 to 228 months. Defendant argues the trial court erred in denying his motion to dismiss for

insufficient evidence. For the following reasons, we find no error.

## I.     Background

On the night of 17 October 2020, Delshon Leach ("Mr. Leach") went to Legacy, a nightclub in Gastonia, with his cousin Trey and two friends, Bri and Wayne. Soon after arriving, Mr. Leach was approached by defendant, who was upset that Mr. Leach was served at the bar before him. During the argument, defendant punched Mr. Leach in the face, and the altercation escalated to include friends of both parties throwing furniture and bottles. The fight continued until a third party shot a firearm inside the club and patrons hurried out of the building.

Mr. Leach and his group, which now included Taliah Slade ("Ms. Slade") and Terruwe Cunningham ("Ms. Cunningham"), exited the front of the club, walking across the street to the nearby parking lot where they had left their cars. Ms. Slade and Ms. Cunningham testified that, while Ms. Slade was speaking to Mr. Leach about the brawl, a man approached him from behind, withdrew a "small . . . black" firearm, and shot at him. The first shot missed Mr. Leach, but Mr. Leach turned and the man shot him several more times before departing. Ms. Slade and Ms. Cunningham gave similar descriptions of the shooter: a Black male wearing an olive hoodie. A nearby driver, Jasmine McNair, testified that she saw the shooting and the shooter's departure while at a stop sign next to the parking lot and called 911. She testified that the shooter wore Army fatigue pants. Fortunately, Mr. Leach survived.

Within two minutes of dispatch, Sergeant Daniel Lane of the Gastonia Police

Department arrived on the scene. Sergeant Lane's attention was focused on one individual, who he testified was a man walking unusually away from the scene, among a group of people running from the crime scene. Sergeant Lane testified that the saw the silhouette of a black gun in his hand, pressed against his thigh, and that the man began to run when ordered to stop. Sergeant Lane and another officer began chasing him on foot. He testified that he saw him removing the hoodie and attempting to place the gun in his waistband. Bodycam footage, admitted into evidence as State's Exhibit 13, shows the man wearing a white T-shirt and Army fatigue pants. The officers apprehended the man after a short chase over approximately three blocks, and Sergeant Lane testified that no other civilians were in the immediate area of the chase and identified the man as defendant. After taking defendant into custody, the officers retraced the man's steps and quickly recovered a small black gun and a green hoodie, which was introduced as State's Exhibit 8. Ms. Cunningham identified this exhibit as matching the sweatshirt she saw.

In a recorded interview taken shortly after the shooting, defendant made a series of conflicting statements about the gun: he twice denied that he ever possessed a gun, before stating that he picked it up off the ground but could not remember shooting it, and that he did and did not run while holding a gun. On 2 November 2020, defendant was indicted for attempted murder, and on 6 September 2022, he was indicted for assault with a deadly weapon with intent to kill inflicting serious injury. At trial before the Honorable David Phillips, defendant

moved to dismiss the charges at the close of the State's case in chief and at the end of all evidence. The trial court denied both motions. After he was found guilty of both charges, defendant filed a written notice of appeal on 21 May 2024. Defendant additionally filed a petition for writ of certiorari on 28 April 2025.

## II. Discussion

We first address our jurisdiction to hear this appeal and defendant's petition for writ of certiorari.

### A. Defendant's Petition for Writ of Certiorari

"Notice of appeal shall be given within the time, in the manner and with the effect provided in the rules of appellate procedure." N.C.G.S. § 15A-1448(b) (2024). An appeal in a criminal case may be taken by either "giving oral notice of appeal at trial" or by "filing [written] notice of appeal with the clerk of superior court and serving copies thereof upon all adverse parties within fourteen days after entry of the judgment or order . . . ." N.C. R. App. P. 4(a). A written notice shall specify the party taking the appeal, designate the judgment or order from which appeal is taken, designate the court to which appeal is taken, and be signed by the appealing party's counsel of record or the party, if proceeding *pro se.* N.C. R. App. P. 4(b).

Here, following sentencing, defendant's counsel filed a written Notice of Appeal on 21 May 2024. Defendant's notice specifies he is the party taking the appeal; identifies the judgment and lower court the appeal is taken from, and includes the case file numbers of the judgment from which defendant seeks to appeal; and is

signed by defendant's trial counsel. "[W]hile the notice of appeal fails to designate the court to which his appeal is taken, as required by Rule 4(b), 'defendant's intent to appeal is plain[.]'" *State v. Rouse*, 234 N.C. App. 92, 94 (2014) (*quoting State v. Ragland*, 226 N.C. App. 547 553, *disc. review denied*, 367 N.C. 220 (2013)). The Appellate Entries signed by the trial court the same day as defendant's Notice of Appeal was filed, the trial court found that "Defendant has given Notice of Appeal to the N.C. Court of Appeals[.]" "[A]nd since this Court is the only court with jurisdiction to hear defendant's appeal, it can be fairly inferred defendant intended to appeal to this Court." *Id.* (*See* N.C.G.S. §§ 7A-27(b)(1) (2024) and 15A-1444(a1) (2024)). "Having examined defendant's notice of appeal, we find its contents sufficient to satisfy the jurisdictional requirements of N.C. R. App. P. 4(b)." *Id.* As we have jurisdiction under Rule 4, defendant's petition for writ of certiorari is dismissed as moot, and we proceed to the merits of defendant's appeal.

### B.    Motion to Dismiss for Insufficient Evidence

To rule on a motion to dismiss for insufficient evidence, this court asks only whether substantial evidence supported each element of the offense charged and that the defendant perpetrated the offense, sufficient to permit a reasonable jury to find both beyond a reasonable doubt. *State v. Crawford*, 344 N.C. 65, 73 (1996) (citations omitted). We consider all evidence in the light most favorable to the State and give the State the benefit of all reasonable inferences. *State v. Rasor*, 319 N.C. 577, 585 (1987) (citation omitted). "Any contradictions or discrepancies in the evidence are for

the jury to resolve and do not warrant dismissal." *State v. Glisson*, 251 N.C. App. 844, 848 (2017). "Substantial evidence" is the "amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Cox*, 303 N.C. 75, 87 (1981) (citation omitted). Where sufficient substantial evidence for each element was presented, it is proper for the trial court to deny defendant's motion to dismiss. *State v. Bullard*, 312 N.C. 129, 160 (1984) (citations omitted). Circumstantial evidence may be sufficient to survive a motion to dismiss "even when the evidence does not rule out every hypothesis of innocence." *State v. Stone*, 323 N.C. 447, 452 (1988).

Substantial evidence to prove identity is not "subject to an easily quantifiable 'bright line' test." *State v. Miles*, 222 N.C. App. 593, 600 (2012), *aff'd*, 366 N.C. 503 (2014). To determine whether sufficient evidence exists that the accused perpetrated a particular crime, we consider evidence presented of "motive, opportunity, capability, and identity." *State v. Bell*, 65 N.C. App. 234, 238 (1983), *aff'd*, 311 N.C. 299 (1984).

On the question of whether there was sufficient evidence showing that defendant shot Mr. Leach, the State amply met its burden to survive his motions to dismiss. Multiple strands of evidence, including an array of tangible exhibits alongside testimony and identifications from direct eyewitnesses and the officers who apprehended him on the scene, tended to show the following series of events. Defendant instigated a fight with Mr. Leach inside the nightclub and followed him

outside. Witnesses observed defendant wearing an olive hoodie and fatigue pants when he shot Mr. Leach several times and ran away. Officers arrived quickly and discovered defendant near the scene with what looked like a gun in his hand. Next, the officers chased the man a short distance, saw him discard clothing, and apprehended him. Finally, the officers found a discarded firearm and olive hoodie on the route they chased defendant.

Defendant is correct that the evidence contains some inconsistencies as to the precise descriptions given of his appearance in testimony and that the State did not introduce forensic evidence to support its case. Indeed, the State's case relies largely on circumstantial evidence, but here "a reasonable inference of defendant's guilt may be drawn from the circumstances." *State v. Scott*, 356 N.C. 591, 596 (2002).

When we consider the State's evidence as a whole, we find it more than sufficient to survive a motion to dismiss and observe that its tendency to incriminate defendant was overwhelming. This is not a close question. The evidence at trial was not merely sufficient "only to raise a suspicion or a conjecture." *State v. Bell*, 65 N.C. App. 234, 238 (1983), *aff'd per curiam*, 311 N.C. 299 (1984). On the contrary: The State presented testimonial evidence of the shooter's appearance, behavior, and clothing, by eyewitnesses who were able to identify defendant in court, along with body camera footage of defendant's flight and capture near the scene, all of which generally matched the witness' descriptions of events and persons. Furthermore, the jury saw the firearm and the specific articles of clothing described by witnesses, all

recovered from the scene by the arresting officers. Defendant even concedes that he owned the discarded olive hoodie presented as State's Exhibit 8. Lastly, the State presented defendant's own inconsistent and contradictory statements, which can in themselves constitute substantial evidence of a defendant's guilt. *State v. Dover*, 81 N.C. 535, 547–48 (2022).

When we consider this evidence in its totality, in the light most favorable to the State, and drawing all reasonable inferences in its favor, we conclude that a jury could indeed have reasonably inferred from this robust collection of direct and circumstantial evidence that defendant had the motive, opportunity, capability, and identity of Mr. Leach's shooter. Therefore, it was not erroneous to deny defendant's motion to dismiss.

### III. Conclusion

Because substantial evidence supported all elements of the charged crime, including defendant's identity as its perpetrator, the State met its burden to survive defendant's motion to dismiss. Therefore, we find no error by the trial court in this case.

NO ERROR.

Judges COLLINS and HAMPSON concur.

Report per Rule 30(e).